Clifford A. SYVERSON and Alice Syverson, Appellants,

v.

NORTH DAKOTA STATE INDUSTRIAL COMMISSION and Amerada Petroleum Corporation, as unit operator of the Tioga-Madison Unit, Respondent.

In the Matter of the Appeal and Petition for Review of Order No. 257 in Case No. 235 of the North Dakota State Industrial Commission.

No. 7933.

Supreme Court of North Dakota.

Aug. 10, 1961.

Rehearing Denied Oct. 18, 1961.

Dean Winkjer, Williston, for appellants.

Cox, Pearce & Engebretson, Bismarck, for respondent.

STRUTZ, Judge (On reassignment).

This is an appeal by Clifford A. Syverson and Alice Syverson, landowners having certain mineral and royalty interests in the Tioga-Madison reservoir, from a judgment of the district court of Burleigh County affirming an order of the North Dakota Industrial Commission designated as Order No. 257, in case No. 235.

The Tioga-Madison oil field has been in production since the beginning of oil production in North Dakota, in 1951. In 1957, the twenty-three operators in that field determined that the field had been substantially drilled out and that a program of pressure maintenance, by injection of water, was the proper and necessary method of maintaining the field pressure in order to secure the greatest ultimate recovery of oil therefrom. In order to accomplish this result, it was decided to unitize the field so

that it could be operated as one lease. A proposed unitization agreement was drawn by all of the operators in this field, in which the respondent, Amerada Petroleum Corporation, as the largest operator in the field, was designated as operator of the proposed unit. Application for approval of this agreement between the operators was then made to the North Dakota Industrial Commission pursuant to the provisions of Section 38-0809 of the North Dakota Revised Code of 1943. After a hearing to determine whether or not such agreement was in the public interest, protective of correlative rights, and reasonably necessary to increase the ultimate recovery or to prevent waste of oil or gas, as required by the above statute, the Industrial Commission issued its order approving the unit agreement and unit operation agreement for the Tioga-Madison field, finding that such was in the best public interest, was protective of correlative rights, and was reasonably necessary to insure the largest ultimate recovery and to prevent waste. This order was designated as Industrial Commission Order No. 220. No appeal was taken from this order.

Upon the approval by the commission of the unit agreement entered into by all of the operators, the operators proceeded to contact the owners of mineral and royalty interests in the proposed unit. There was a total of 1,058 owners of such interests. Within six months, approximately ninety-eight per cent of such owners had signed the unit agreement. The appellants, however, refused to sign unless they were offered terms more favorable than those made in the offer which had been tendered to them. The record discloses that all of the 1,058 owners of interests in the proposed unit were offered the same terms.

An application dated July 25, 1958, was then filed with the State Industrial Commission by the respondent corporation, which had been designated operator of the unit. Such application requested an order of the commission permitting the injection of water into the unit reservoir through

certain designated wells for the purpose of maintaining reservoir pressure. Such application further prayed for the establishment of field rules for the operation of the proposed unit.

At the hearing on this application, held on August 19, 1958, the appellants appeared by their attorney and participated in the hearing by cross-examining the witnesses for the applicant, by making statements into the record setting forth their position in the matter, and by stating their opposition to the unitization of the field. The appellants, however, did not introduce any evidence to support their opposition to the application.

On September 6, 1958, the Industrial Commission issued its order, No. 257, authorizing the injection of water into the Tioga-Madison reservoir and designating certain wells as injection wells for the unit. None of the wells in which the appellants have an interest were so designated. The order further provided that additional wells in the unit might be designated as injection wells in the future upon approval of the State geologist. It also established certain field rules for the operation of the unit.

After the order of the Industrial Commission had been issued, the appellants made application to the commission for a rehearing. This application was denied. The appellants then appealed from the order to the district court of Burleigh County, which court affirmed the order by entering judgment affirming the same.

An appeal was taken to this court from such order and from the judgment affirming the Industrial Commission order. In such appeal, the appellants demand a trial de novo and a review of the entire case in the Supreme Court.

All experts on oil and gas production agree that, presently, there is no way by which all of the oil and gas in any field can be recovered. How much of the oil and gas will be recovered from any field depends on the pressure in the field. Experts agree that the amount of oil recovered can be increased substantially by the use of secondary pressure maintenance operations, including water injection into the field or pool. See the Law of Pooling and Unitization by Raymond M. Meyers, at page 377 et seq., citing numerous cases. In this treatise, the author thoroughly discusses the problems involved in unitization of an oil field.

North Dakota recognized this engineering principle of repressuring an oil field early in its history of oil production. The Legislative Assembly made provision for voluntary agreements for unit development and operation of a field or pool in connection with repressuring or pressure maintenance operations. Sec. 38-08-09, N.D.C.C. This section originally was enacted as Section 10, Chapter 227, of the 1953 Session Laws and was enacted less than two years after the discovery of oil in this State. It makes voluntary agreements for unit operation of an oil field valid. Where such agreements are approved by the Industrial Commission as being in the public interest, protective of correlative rights, and reasonably necessary to increase the ultimate recovery or to prevent waste of oil or gas, they shall not be held or construed to violate statutes of this State relating to trusts, monopolies, or contracts and combinations in restraint of trade. The statute further provides that such unitization agreements are to be binding only on the parties who execute them.

The appellants have appealed from the order granting to Amerada Petroleum Corporation the authority to repressure the Tioga-Madison reservoir by injecting water into certain designated wells, and establishing the necessary field rules for the proper operation of the field as a unit. In this appeal, the appellants are attempting to raise objections to the approval

of the Industrial Commission of the unit agreement and the finding by the Industrial Commission that such unitization was in the best public interest, was protective of correlative rights, and was reasonably necessary to insure the greatest ultimate recovery and to prevent waste. The findings as to public interest, correlative rights, making the greatest ultimate recovery, and prevention of waste were contained in order No. 220, which was not appealed from. There was competent evidence to warrant the findings of the Industrial Commission. In any event, this court will not consider these matters in an appeal from a subsequent order permitting injection of water into the field.

Unitization thus had become an established fact under order No. 220. The provisions of the unitization agreement subsequently submitted to the owners of mineral and royalty interests in the field were to be binding only upon those persons having interests in the proposed unit who agreed in writing to such unitization. The appellants, by refusing to sign such agreement, are not affected thereby. Their rights are independent of this agreement, and the order approving the unit agreement and the order permitting repressuring of the field affect only those owners who have joined in this agreement.

Testimony produced at the hearing in support of the application for an order to permit injection of water into the reservoir clearly establishes that substantially more oil and gas would ultimately be recovered from the field under such a repressure program than would be recovered without such repressuring. The appellants do not attempt to contradict this evidence, but they do contend that the amount which they would be paid for joining the unit agreement is inadequate. The record discloses that all of the owners of mineral and royalty interests are treated alike under the proposed agreement. We are of the opinion that the record justifies the order appealed from.

In this case, approximately ninety-eight per cent of those owning interests in the field have signed such unitization agreement. If one or more persons with interests within the boundaries of the proposed unit could, by refusing to sign the agreement, make it inoperative and thus defeat the entire conservation program for the field, which the appellants themselves agree will substantially increase the amount of oil and gas recovered from this field, all conservation efforts could be blocked. If this were possible, the appellants could force the operator of such unit to either give them an unreasonably greater share of the production than they are entitled to receive or they could, though owning but a very small fraction of the mineral and royalty interests in the field, defeat the entire conservation program and thus leave large amounts of oil and gas in the pool which would remain unrecovered. Surely, on the showing made by the appellants in this case, such a result would be unjust. Reed v. Texas Company, 22 Ill.App.2d 131, 159 N.E.2d 641, at page 644.

By refusing to sign the unitization agreement, as the appellants had the right to do under the statute, they are left in the same position that they would be in if there had been no unit agreement proposed. The respondent, as lessee under the lease with the appellants, will be compelled to live up to all of its obligations under such lease. Respondent will be compelled to continue not only the operation of the oil wells upon the appellants' land, but will be compelled to continue the "in lieu" payments which it has contracted to make. We fail to see how the appellants are in any way injured by the order appealed from on the record that is before us.

Appellants contend that they may be damaged at some future date if the State geologist, under the provisions of the order appealed from, should designate one of the appellants' wells as an injection well. The order appealed from does provide that additional wells in the unit may be designated

as injection wells upon the approval of the State geologist. We interpret that to mean, however, that such additional injection wells must be wells belonging to owners who have signed the unit agreement. The wells of the appellants, though within the area covered by the proposed unit agreement, are not within the agreement since the appellants have not signed the same.

Therefore, that portion of order No. 257 which provides for the use of additional injection wells, on designation and approval of such wells by the State geologist, would apply only to wells of owners who have signed the unit agreement. Since the statute providing for the unit operation of an oil field was enacted in the public interest and for the purpose of encouraging and promoting development, production, and unitization of oil and gas in a manner so as to prevent waste and to secure the greatest ultimate recovery, the delegation of authority by the Legislative Assembly to the Industrial Commission to promulgate rules and regulations to carry such purpose into effect would be a valid delegation of authority. 11 Am.Jur., Constitutional Law, Sec. 240, p. 955.

We do not pass on the validity of any attempt of the Industrial Commission to delegate to the State geologist the authority given to it by the Legislative Assembly. The question is not before us since the State geologist has not attempted to exercise such authority and may never do so.

The question before us on this appeal is whether the respondent has the right to repressure the Tioga-Madison field by water injection into wells designated in the application, all of which wells are within the area covered by the unit agreement. As pointed out, the appellants' interests are not within the area covered by such agreement since the appellants have refused to join, as they had the right to do under the statute. By refusing to join such agreement, however, appellants may not, at the same time, prevent other interests in the field from developing adjoining tracts under such agreement. They have had an equal opportunity with other owners within the area of the proposed unit to become parties to such agreement on the same basis as all other owners in the field. Whatever the result would be if the appellants could show actual damages, they certainly are not entitled to complain in the absence of such showing. Tide Water Associated Oil Co. v. Stott, 5 Cir., 159 F.2d 174.

For all of the reasons set forth herein, the order of the Industrial Commission and the judgment of the district court affirming such order are affirmed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.