In the Matter of the Appeal and Petition for Review of Order No. 257, Case No. 235 of the North Dakota State Industrial Commission, which Order was made Pursuant to the Application of Amerada Petroleum Corporation on Behalf of the Operators in the Tioga-Madison Unit for Permission to Inject Water into the Tioga-Madison Reservoir, Williams, Mountrail and Burke Counties, North Dakota, for the Purpose of Maintaining Pressure in that Reservoir, to Establish Field Rules With Respect to Proration and the Distribution of the Allowable Production within the Tioga-Madison Unit, and to Establish other Additions to or changes in the Field Rules as may be Necessary or Appropriate to the Operation of the Tioga-Madison Unit.

Vernal ARNSTAD and Elmer Thomsen, Appellants,

v.

NORTH DAKOTA STATE INDUSTRIAL COMMISSION and Amerada Petroleum Corporation as Unit Operator of the Tioga-Madison Unit, Respondents.

No. 8054.

Supreme Court of North Dakota.

July 26, 1963.

Leonell W. Fraase, Tioga, and Robert F. Mowdy, Tioga, for appellants.

Cox, Pearce & Engebretson, Bismarck, for respondent, Amerada Petroleum Corp.

ERICKSTAD, Judge.

This is an appeal by Vernal Arnstad and Elmer Thomsen from the judgment of the District Court entered in the Office of the Clerk of Court of Burleigh County on the 27th day of February, 1962, affirming Order No. 257 in Case No. 235 of the North Dakota Industrial Commission. The appellants demanded a trial de novo.

Order No. 257 is in connection with pressure maintenance operations and is the same order from which the Syversons appealed in the case entitled Syverson v. North Dakota State Industrial Commission (N.D.), 111 N.W.2d 128. Background information pertinent to this case is contained in the aforesaid opinion.

Although the record of the proceedings preliminary to the order appealed from herein is not before this court, it would appear that an application for approval of a unitization agreement entered into by and between the operators in the Tioga-Madison oil field was submitted to the North Dakota Industrial Commission and that, pursuant to the provisions of section 38-0809 of the North Dakota Revised Code of 1943, a hearing was held by the said commission to determine whether or not the said unitization agreement was in the public interest, protective of correlative rights, and reasonably necessary to increase the ultimate recovery or to prevent waste of oil or gas, as required by the aforesaid statute.

On March 14, 1958, the North Dakota Industrial Commission entered its order No. 220, approving the Unit Agreement and the Unit Operating Agreement for the Tioga-Madison field in Williams, Mountrail, and Burke Counties, North Dakota, which agreements we shall hereafter refer to as the Unit Agreement. No appeal was taken from this order.

Within a period of approximately six months of the aforesaid order, approximately ninety-eight percent of the owners of mineral and royalty interests in the area covered by the Unit Agreement had signed the Unit Agreement; and, under the terms of the said agreement, it became effective on August 1, 1958.

Amerada Petroleum Corporation, as unit operator, shortly prior to the effective date of the Unit Agreement, filed an application with the North Dakota Industrial Commission for permission, among other things, to inject water into the Tioga-Madison Reservoir, covered by the Unit Agreement, for the purpose of maintaining pressure in the reservoir.

At the hearing on this application, held on August 19, 1958, the appellants appeared through their attorney and participated in the hearing by cross-examining the witnesses for the applicant and by making statements for the record, setting forth their position in the matter.

On September 6, 1958, the Industrial Commission issued its order No. 257, authorizing, among other things, the injection of water into the Tioga-Madison Reservoir and designating certain wells as injection wells for the unit.

The appellants then filed a petition for rehearing with the said commission, which rehearing was denied on October 15, 1958. The appellants then appealed from the order of the commission to the District Court of Burleigh County, which court, in its Findings of Fact, Conclusions of Law, and Order for Judgment dated February 26, 1962, affirmed the order. Judgment of the District Court pursuant thereto was entered in the Office of the Clerk of the District Court of Burleigh County on the 27th day of February, 1962. This appeal is from the judgment of the district court affirming the aforedescribed order of the commission.

The appellants and others share in the minerals, if any, in or under the North Half of the Southeast Quarter (N½SE¼) of Section Eighteen (18), Township One Hundred Fifty-seven (157) North, Range Ninety-four (94) West of the Fifth (5th) P.M.

This tract of land lies within the area designated on certain maps as being the Tioga-Madison Oil Field. At the time the application for unitization was made, the said mineral interests were not leased, and there was not a producing oil or gas well on the said tract.

Neither the application for unitization nor the order approving the Unit Agreement included the property of the applicants.

The major difference between this case and the case of Syverson v. North Dakota State Industrial Commission, N.D., 111 N.W.2d 128, is that in the said case the Syversons were offered an opportunity to be in the unit but declined, for reasons stated therein, whereas in this case the applicants have not had an opportunity on any basis to be within the unit.

The appellants assert three specifications of error. The first two specifications, hereinafter set forth, may be considered together.

"I.

"The District Court erred in its decision by concluding that the holding of the Supreme Court in the case of Syverson v. North Dakota Industrial Commission and Amerada Petroleum Corporation, 111 N.W.2d 128, was applicable to the facts and procedure followed by Appellants in this case.

"II.

"The North Dakota Supreme Court, in the Syverson case cited above, held that Syversons had appealed from the wrong order of the Industrial Commission, and that Syversons should have appealed from Order 220, and the District Court, in error, held, in its decisions, that the Appellants Vernal Arnstad and Elmer Thomsen had likewise appealed from the wrong order."

An analysis of the record on appeal in the instant case has convinced this court that the holding of this court in the case of Syverson v. North Dakota State Industrial Commission, supra, applies. This court in the said case, 111 N.W.2d on page 133, held:

"* * * The findings as to public interest, correlative rights, making the greatest ultimate recovery, and prevention of waste were contained in order No. 220, which was not appealed from. There was competent evidence

to warrant the findings of the Industrial Commission. In any event, this court will not consider these matters in an appeal from a subsequent order permitting injection of water into the field."

■ Inasmuch as no appeal was made from order No. 220, the issues involved in determining whether the unit was in the public interest, protective of correlative rights, and reasonably necessary to increase ultimate recovery or to prevent waste of oil or gas, are not before this court for consideration.

The record of the proceedings of the Industrial Commission containing these determinations is not before this court at this time and was not before the court at the time of the determination of Syverson v. North Dakota State Industrial Commission, supra.

The district court, therefore, was correct in finding that the ruling in the aforedescribed case applied, and that the appellants have appealed from the wrong order to raise the aforesaid issues.

The third specification of error asserted by the appellants reads as follows:

"III.

"That the District Court and the North Dakota Industrial Commission erred in not granting the relief asked for by Appellants, which was to either participate on a proportionate basis of the total production from the Tioga-Madison field or to participate on a proportionate basis in the oil produced from the Tioga-Madison field by becoming a part of the Tioga-Madison Unit area."

■ Without deciding the issue of whether or not the Industrial Commission has the authority to determine the basis on which participants in a voluntary unitization agreement shall share in the unit's production, it is sufficient for this case to note that the issue of participation in the produc-

tion of the Tioga-Madison unit was an issue that should have been considered at the hearing which had before it the application for approval of the proposed unitization agreement.

The question before the Industrial Commission in the hearing resulting in the order appealed from is governed by Rule 701 of the North Dakota Industrial Commission, which reads as follows:

"Permit for Injection of Gas, Air or Water

"Where correlative rights of all operators are protected and waste will not occur:

(a) The injection of gas or air or water into any reservoir for the purpose of maintaining reservoir pressure, for secondary recovery operations or for water disposal, shall be permitted only by order of the Commission after notice and hearing. Orders approving the application will not be made within 15 days of the filing of the application unless the written consent of all persons entitled to notice is filed with the Commission within such time.

(b) The application for all permits to inject gas, or air, or water into any reservoir shall contain the following:

1. Plat showing the location of the input well or wells, and the location of all oil and gas wells, including abandoned and drilling wells and dry holes, and the names of operators and owners within one-half mile of the input well or wells; and each offset operator.

2. The formations from which wells are producing or have produced.

3. The name, description, and depth of the formations to be affected by injection.

4. The log of the input well or wells, or such information as is available.

5. Description of the input well's casing, or the proposed casing program, and proposed method for testing casing before use of the input wells.

6. Statement as to whether gas, air or water is to be used for injection, its source, and the estimated amounts to be injected daily.

7. The names and addresses of the operators of the project.

(c) Such applications shall be approved, or not objected to, by all operators who are to participate in a proposed cooperative plan, or by the designated operator of a unitized project.

(d) In addition to the notice to the Commission required by law, notice of such application shall be given by the applicant by mailing or delivering a copy of the application to each operator in the pool. Such notice shall be mailed or delivered on or before the date the application is filed with the Commission. An affidavit shall be attached to the application, showing the parties on whom the notice has been served and their addresses."

■ An owner of a mineral interest, which is not included in an area of a unit agreement approved by the Industrial Commission and upon which there has been no development for the production of oil or gas, is not an "operator" within the meaning of that word as used in Rule 701 of the Industrial Commission and, therefore, is not entitled to notice under the rule.

It should be noted that section 38–08–09 of the North Dakota Century Code authorizes an agreement for the unit or cooperative development and operation of a field or pool in connection with the conduct of re-pressuring or pressure maintenance operations, cycling or re-cycling operations, including the extraction and separation of liquid hydrocarbons from natural gas in connection therewith, or any other method of operation, including water floods. This indicates that the Legislature considered that a showing of the probability of conservation by water injection or other practices aforementioned is essential to the formation of a unit.

Permission to inject water to conserve pressure in the reservoir would appear to this court to be a prime purpose of the applicant operators in securing the Industrial Commission's approval of the unit. The time, therefore, that the appellants became aggrieved and thus the time they should have objected and appealed was when the Industrial Commission approved the Unit Agreement which did not include them.

■ The issue of participating in the proceeds of production of a unitized area of an oil field by the owner of a mineral interest which is not in the unit, and the issue of whether an owner of a mineral interest has a right to be included in a Unit Agreement and participate in the proceeds of production of the unitized area, are issues that must be raised at the hearing of the Industrial Commission held to determine whether a proposed Unit Agreement should be approved.

There being no appeal from the order authorizing the unit and the record of said hearing being not before this court, we cannot consider the issue raised by the appellants involving correlative rights of mineral owners, nor can we consider the question of what constitutes a field or pool within the meaning of Section 38–08–09, N.D. C.C.

For the reasons stated herein, we find that order No. 257 of the North Dakota Industrial Commission and the judgment of the district court affirming same are correct and thus the judgment is affirmed by this court.

MORRIS, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.