CLINKSCALES, Respondent, v. WISCONSIN GRANITE CO., Appellant.

(160 N. W. 843.)

(File No. 3959.   Opinion filed December 30, 1916.   Rehearing denied February 7, 1917.)

1.   **Master and Servant—Injury to Employee—Dumping Tram Load—Insufficient Rail—Assuming Dangerous Position—Contributory Negligence.**

A servant may not voluntarily place himself in a position he knows to be dangerous, and then recover damages for injuries received, even though the damages be the result of the master's negligence; since one may not recover for injury where his own negligent act has contributed to the cause of injury. Therefore, if plaintiff, who was injured by the dumping of a load of stone from a tram into a gondola car standing underneath, while he was standing with one foot on boards laid between the tram rails and the other on the tram rail or on the edge of gondola car below, the dumping having been caused by the breaking of the tram rail near where he stood, voluntarily placed himself there and was injured thereby, his contributary negligence would bar his recovery; the evidence showing the tram rail insufficient to sustain the ordinary load intended to be placed upon it.

2.   **Same—Injury to Servant—Insufficient Instrumentality—Master's Prima Facie Negligence, Evidence of.**

When in a suit for injury to a servant, he shows that the master furnished him an instrumentality to be used for a particular purpose; that he used it for the purpose intended, in the manner intended, and that it broke when so used and injured him, he makes out a prima facie case of negligence against the master; the breaking itself demonstrates the inadequacy of the instrumentality; which doctrine however does not dispense with the rule that the party alleging negligence must prove it; it merely determines the mode of proving it, or what shall be prima facie evidence of negligence.

3.   **Same—Injury to Employee—Assumption of Risk—Extraordinary Risk, as Defense—Knowledge of Danger, Effect.**

An employee assumes the ordinary risks incident to his employment, including those connected with use of proper business appliances.   But when the risk is out of the ordinary, there is no presumption or assumption of such risk, and it

becomes a matter of affirmative defense to be pleaded and proved by the employer; hence, when the employee proves injury by a cause or danger not usually or reasonably attendant upon his employment, he is entitled to recover, unless it be shown he knew of such danger and comprehended its nature before the accident happened. So **held,** where plaintiff was injured by the dumping of a load of stone from a tram car into a gondola car below, while he was standing partly upon boards on the tramway and partly upon the edge of the tram, and the dumping was caused by the breaking of the tram rail. **Held,** further, that the breaking of the tram rail was not such a risk.

4. **Same—Negligence—Furnishing Suitable Appliances, Servant's Right to Presume—Burden of Proof.**

 A servant has the right to assume and rely upon the fact that his employer will provide, and had furnished, safe and suitable appliances, and the burden of showing his knowledge of defects or circumstances that would put a reasonable person on his guard, is upon the employer.

5. **Trials—Evidence—Directed Verdict, Presumption of Undisputed Evidence, When?—Favorable Construction.**

 On motion for directed verdict, by either party, the trial court and Supreme Court will assume that the evidence of the party against whom verdict is demanded is undisputed, and will give such evidence a construction most favorable to such party, and all reasonable inferences arising therefrom will be given him.

6. **Appeals—Error—Sufficiency of Evidence—Appeal for New Trial —Presumption of Undisputed Evidence—Inferences From Evidence, Rule.**

 On appeal from an order denying a new trial, the Supreme Court will assume that the evidence of the party against whom a directed verdict was demanded was undisputed, and will give the evidence a construction most favorable to that party, and will give him the benefit of all reasonable inferences arising therefrom.

7. **Master and Servant—Employee's Injury—Defective Tram Rail— Knowledge of Danger, Pleading, as Admission of—Contributory Negligence.**

 Where, in a suit by an employee for damages for personal injury caused by the dumping of a load of stone from a tram car, caused by the breaking of a defective tram rail, plaintiff alleges the insufficiency of the tram rail, "that one rail was cracked and defective, all of which was observable and easily discovered on inspection and was known to defendant," held, that such pleading does not amount to an admission of plaintiff's knowledge of the alleged defects; the complaint containing

a further allegation that these facts were unknown to plaintiff; nor was such allegation that the defects were "observable and easily discoverable" a basis for charging plaintiff with contributory negligence in failing to discover such defects; he not being chargeable with the duty of inspection as to its fitness. The test is whether the defect is known to or is plainly observable by him; and he is not chargeable with contributory negligence for failure to observe such defects.

8.  Same—Dumping Tram Car Upon Employee—Knowledge of Insufficient Rail—Sufficiency of Evidence.

Under evidence by a fellow servant, in a suit for injury to plaintiff by dumping a tram car load of stone upon him, to the effect that every load of stone they took down, plaintiff told witness to be careful because the rails were too small for the big load, followed by plaintiff's testimony that in a talk with foreman a day or two before the action, he told the foreman that it looked like the rails were too small, and the foreman said, "Go ahead," etc., and that a day or two before the accident the rail was changed by the foreman, plaintiff and the fellow servant, that the supplied rail was the one that broke and let the load down, that witness had not been told and did not know this rail was apt to break, **held,** that the rail spoken of in said conversations with the fellow servant referred to the rail in use before the change was made; that the record contains no evidence that plaintiff knew of any defects in the rail which broke.

9.  Same—Servant's Injury from Dumping Tram Car—Contributory Negligence—Use of Tram Car Prop—Sufficiency of Evidence.

In a suit for injury to plaintiff by the dumping of a load of stone from a tram car upon him, defendant claiming plaintiff was guilty of contributory negligence for failure to use a wooden prop, alleged to have been furnished by defendant with instructions to place it under the tram or trap to sustain the loaded car, while being dumped; it appearing that the load was dumped through breaking of a weak tram rail, **held,** that the testimony concerning instructions by the foreman to plaintiff about the use of the prop and the necessity of using it as such support, being in direct conflict as between plaintiff's and defendant's witnesses concerning facts upon which defendant seeks to charge plaintiff with contributory negligence, such conflict must be resolved in favor of plaintiff upon appeal from an order denying defendant's motion for a directed verdict.

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by Edgar Clinkscales, against the Wisconsin Granite Company, a corporation, to recover damages resulting from personal injury. From a judgment for plaintiff, from an order overruling defendant's motion for a directed verdict, and from an order denying a new trial, defendant appeals. Judgment and orders affirmed.

*Parliman & Parliman,* for Appellant.

*Waggoner & Stordahl,* and *G. W. Egan,* for Respondent.

(1) To point one of the opinion, Appellant cited: Jones v. Milwaukee Ry. Co., 133 N. W. 636; Waxalacie Oil Co. v. McLain, 66 S. W. 266; Nasse v. Mining Co., 133 N. W. 479; Sweeney v. Poppenberger, 133 N. W. 474; Brouseau v. Co., 27 L. R. A. (N. S.) 1052; Ragon v. Co., 56 N. W. 612; Texas v. Archibald, (42 L. E.) 1188 (U. S.)

Respondent cited: Demars v. Glenn Mfg. Co., 40 Atl. 902; Redd v. Stockmeyer, (C. C. A.) 74 Fed. 186; Baltimore & Ohio Ry. v. Taylor, (C. C. A.) 186 Fed. 828.

(2) To point two of the opinion, Respondent cited: Note 8, Negligence Comp. Cases, p. 497; Lee v. Leighton, (Minn.) 129 N. W. 767; Penson v. Inland Co., (Wash.) 132 Pac. 39; St. L. & C. R. Co. v. Roesch, (Ind.) 26 N. E. 171.

(3) To point three of the opinion, Appellant cited: Smith v. Co., (Minn.) 43 N. W. 968; Stimson v. Whitmore, 85 Atl. 113; Williams v. Larns, 193 Fed. 852; Carlson v. City, 8 S. D. 47; Plantz v. Kreutzer, (Ia.) 154 N. W. 785.

Respondent cited: Knueckel v. O'Connor, 76 N. Y. S. 829; Vol. 11, Am. & Eng. Ann. Cases, 116, note to Williams v. Sleepy Hollow Mining Co.

(4) To point four of the opinion, Appellant cited: Thompson v. Railway Company, 27 S. D. 571; Erskine v. Company, 71 Fed. 270; Samulski v. Kenasha Paper Co., (Wis.) 133 N. W. 142.

SMITH, J. Action for damages resulting from personal injuries. Appeal is from a judgment for plaintiff. Appellant assigns error upon an order of the trial court overruling defendant's motion for a directed verdict made at the close of plaintiff's evidence, and renewed at the close of all the evidence, and also assigns as error insufficiency of the evidence to sustain the verdict. Plaintiff was employed as a laborer by the defendant cor-

poration, which was engaged in the business of quarrying and preparing for the market materal known as Sioux Falls granite. He was engaged in operating a small tramcar which ran on a two-rail track over the top of an open gondola car into which the material was dumped from the tramcar. This material was loaded into receptacles known as "skips," at the bottom of the quarry, many feet below the surface; the loaded skip raised by a derrick, and placed upon the tramcar, which was then moved by hand, on small steel rails extending out over the gondola car. The upper frame-work of the tramcar, upon which the skip rested, was hinged lengthwise to the bottom of the tram, so that such frame could be tipped toward either side of the tram car, causing the material in the skip to fall into the gondola car below. The skips were made with one side open, through which opening the load discharged in the direction in which the hinged portion of the framework was tipped. The open end of the skip could be so placed on the framework as to permit discharging its load on either side of the tramcar. The hinged framework upon which the skips were placed was sustained by standards, two on each side of the tram under the corners of the framework. In operation, the loaded skip was placed on this framework, the four standards or supports in position, and the tramcar moved along its track out over the gondola car, the two standards on one side unhooked, or taken down, the hinged framework on the tram tipped toward one or the other side, and the load discharged into the gondola car beneath. At the time of the accident, the gondola car stood on the railway track running east and west. The tram railway extended toward the north, from a point 60 or 70 feet south, up to and across the gondola car.

Plaintiff and one Holm, who was working with him, had just moved the loaded tramcar out over the open gondola car, and were in the act of dumping its load toward the east. A board extended along the west side of the tram on which Holm stood. Plaintiff went over to the northeast corner of the tram to let down the supporting standard there, while Holm let down the standard at the southeast corner. Just then the tramrail broke near where plaintiff was standing with one foot on some boards laid between the rails, and the other on the tramrail or

14—Vol. 38, S. D.

on the edge of the gondola car below, and he fell into the car, along with the loaded skip, and was injured. It is conceded that the tramrail on the east side of the tramcar broke, and that the loaded skip and plaintiff thereby were precipitated into the gondola car. The injury to plaintiff was caused by the loaded skip and its contents striking his body. If the tramrail had not broken, the plaintiff would not have fallen or been injured. It is not contended or suggested in the evidence that the tramcar was overloaded by plaintiff's fellow servants. No question is presented in the record as to the condition of the tramcar track or rails, except that portion which extended over and across the gondola car. The rail broke either because of insufficient strength to carry the ordinary load placed upon it, or because it was cracked and unfit for the use to which it was put by the defendant. It is clear that the breaking of the rail was the proximate cause of plaintiff's injury, and that the act of plaintiff in going to the east side of the tramcar to let down the support, preparatory to dumping the load, did not contribute in any way to the breaking of the rail. If the rail had not broken, and plaintiff had been injured while in the act of dumping the load, because he was operating the tramcar in an improper or negligent manner, when he removed the standard, it might reasonably be contended that his act contributed to his injuries. On the other hand, if it be assumed that plaintiff was at an improper place when he attempted to let down the standard, still the fact did not contribute to the breaking of the rail, which was the direct cause of his injuries.

[1] It is true, an employe may not voluntarily place himself in a position he knows to be dangerous, and then recover damages for injuries received, even though the danger be the result of the employer's negligence. This principle is the foundation of the rule that one may not recover damages for injuries where his own negligent act has contributed to the cause of the injury. It follows that if plaintiff knew the tramrail was liable to break because of weakness or cracking, and voluntarily placed himself where he was likely to be, and was, injured thereby, his own contributory negligence would bar his recovery.

[2] There is sufficient evidence in the record to sustain a finding by the trial court or a jury that the tramrail was insuf-

ficient to sustain the ordinary load intended to be placed upon it. La Bee v. Sultan Logging Co., 47 Wash. 57, 91 Pac. 560, 20 L. R. A. (N. S.) 405:

"Instrumentalities intended for a particular purpose, and suitable * * * for that purpose, do not break when put to the use for which they are designed when used in the proper manner. So the converse of this proportion must be true. If the instrumentality does break when put to the use for which it is designed and used in a proper manner, it is evident that it was either defective in material or construction in the first instance, or has become so since it was put to use. Therefore, when the servant shows that the master furnished him an instrumentality to be used for a particular purpose, that he used it for the purpose intended in the manner intended, and that it broke when being so used and injured him, he makes out a prima facie case of negligence against the master."

The case of Penson v. Inland Empire Paper Co., 73 Wash. 338, 132 Pac. 39, L. R. A. 1915F, 15, is to the same effect. That court says: .

"The respondent relied upon the doctrine of res ipsa loquitur as establishing the appellant's default. * * * A circumstance necessary to its application is that the injured party, from the nature of the case, is not in a position to explain the cause, while the party charged is in a position where he is, or if he has exercised reasonable care should be, able to explain and show himself free from negligence, if in fact he was so. * * * 'The doctrine does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it, or what shall be prima facie evidence of negligence. * * * So defined, we think the rule clearly applies to the facts before us. The actual occasion of the accident was not a subject of speculation. The staging was being used as intended. The 2x4 support broke. The breaking itself demonstrated to a certainty that it was inadequate, either by reason of an open or a latent defect."

To the same effect are the decisions of our own court. Perrault v. Wisconsin G. Co., 32 S. D. 275, 144 N. W. 110; Iverson v. Look, 32 S. D. 321, 143 N. W. 332.

[3, 4] The law presumes that an employe assumes the ordinary risks incident to his employment, including those connected with the use of proper appliances used in the business. But when the risk is out of the ordinary, there is no presumption of assumption of such risk, and it becomes a matter of affirmative defense to be pleaded and proved by the employer. Therefore, when the employe shows that he has been injured by a cause or danger not usually or reasonably attendant upon his employment, he is entitled to recover, unless it be shown that he knew of such unusual danger and fully comprehended its nature, before the accident happened. Perrault v. Wisconsin Granite Co., supra. In the present case plaintiff assumed the ordinary risk incident to his employment. But the breaking of the tramrail was not such a risk. Plaintiff had the right to assume and rely upon the fact that his employer would provide, and had furnished, safe and suitable appliances, and the burden of showing plaintiff's knowledge of defects, or such circumstances as would put a reasonable person on his guard, was upon the employer.

Appellant by its answer denies plaintiff's allegation of negligence, and affirmatively alleges that plaintiff had full knowledge of the condition of the track, and voluntarily continued to operate the tramcar thereon, and voluntarily assumed any and all risks of said employment. At the close of all the evidence, there was a conflict in the evidence as to plaintiff's knowledge that the tramrail which broke was defective or of insufficient strength. It must be borne in mind that this appeal is from an order overruling defendant's motion for a directed verdict.

[5] The rule has been long settled in this state, in accordance with that existing in many other states, that on a motion for a directed verdict by either plaintiff or defendant, the trial court and this court will assume that the evidence of the party against whom a verdict is demanded is undisputed, and will also give such evidence that construction which is most favorable to such party. Thus on a motion of the defendant for a directed verdict the court will assume the evidence of the plaintiff to be undisputed, and give it the most favorable construction for the plaintiff that it will properly bear, and give the plaintiff the benefit of all reasonable inferences arising therefrom. Marshall v. Harney Peak Mfg. Co., 1 S. D. 350, 47 N. W. 290; Merchants' National

Bank v. Stebbins, 15 S. D. 280, 89 N. W. 674; Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Sanford v. Duluth, etc., Co., 2 N. D. 10, 48 N. W. 434; John Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164.

[6] The rule is substantially the same upon an appeal from an order of the trial court overruling a motion for a new trial upon the ground of insufficiency of the evidence to sustain the verdict. Vermont Marble Co. v. Declez Co., 135 Cal. 579, 67 Pac. 1057, 56 L. R. A. 728, 87 Am. St. Rep. 143; Wilkinson v. Aetna Life Ins. Co., 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. Rep. 269; O'Callaghan v. Delwood Park Co., 242 Ill. 336, 89 N. E. 1005, 26 L. R. A. (N. S.) 1054, 134 Am. St. Rep. 331, 17 Ann. Cas. 407; B. & O. R. Co. v. Dever, 112 Md. 296, 75 Atl. 325, 26 L. R. A. (N. S.) 712, 21 Ann. Cas. 169; Weber v. Kansas City C. R. Co., 100 Mo. 194, 12 S. W. 804, 13 S. W. 587, 7 L. R. A. 819, 18 Am. St. Rep. 541; Bank v. Weston, 159 N. Y. 201, 54 N. E. 40, 45 L. R. A. 547; Springs v. Schenck, 99 N. C. 551, 6 S. E. 405, 6 Am. St. Rep. 552; Merrill v. Oregon Short Line, 29 Utah, 264, 81 Pac. 85, 110 Am. St. Rep. 695; Kroger v. Cumberland T. P. Co., 145 Wis. 433, 130 N. W. 513, 35 L. R. A. (N. S.) 473; Lee v. Prudential Life Ins. Co., 203 Mass. 299, 89 N. E. 529, 17 Ann. Cas. 236; 2 R. C. L. 198.

[7, 8] But appellant contends that plaintiff in his complaint has alleged that the tramrails were of insufficient strength, and that one rail was cracked and defective, all of which was "observable and easily discoverable on inspection," and was known to the defendant, and that such pleading is a conclusive judicial admission, which charges plaintiff with knowledge of the defects alleged. In the same paragraph of the complaint, however, it is alleged that all of these facts were "unknown to this plaintiff." But even if it be assumed that the complaint conclusively admits that such defects were "observable and easily discoverable," such admission is not one upon which plaintiff can be charged with contributory negligence in failing to discover such defects, because where the employer furnishes the complete appliance, the employe may assume it to be sufficient and fit for the use intended, and is not charged with the duty of inspection as to its

fitness. The test is whether the defect is known to him, or is plainly observable by him. Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96. He is not bound to look for danger, and he assumes the risk only when the danger is so obvious that one who owes no duty to inspect was bound to discover it. Rase v. M. St. P. R. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138; Lee v. Leighton Co,, 113 Minn. 373, 129 N. W. 767. He was not chargeable, therefore, with contributory negligence for failure to observe defects, even such as may have been "observable or easily discoverable on inspection," according to the allegation in his complaint.

[9] Appellant further contends that plaintiff is shown to have had actual knowledge of the insufficiency of the rail by the undisputed testimony of Holm, who worked with him and was his witness at the trial. Holm testified, in substance, that every load they took down, Clinkscales told him to be careful, because the rails were too small for the big load. Clinkscales himself did not testify to any such conversations with Holm, but did testify that he had a talk with Sandness, the foreman, a day or two before the accident, in which he told him it looked like the rails were too small, and Sandness said to "go ahead, we have always loaded on them. There will be some rails here in a day or two." Clinkscales then testified:

"A day or two before the accident the rail was changed. Andrew Sandness, myself, and this man that was working with me changed them. Mr. Sandness was the boss, and he was there. They looked to be old rails. The rail that was put in there Mr. Sandness got up by the engine room. That was the rail that broke and let the load down on me. I did not know this rail was apt to break and let the load down on me. I did not think it would break; no one had told me the rail was apt to break and cripple me for life."

It is clear that the rail spoken of in the conversation testified to by Mr. Holm referred to the rail in use before this change. There is no evidence in the record tending to show that plaintiff had knowledge of any defects in the rail which broke.

[10] Appellant also contends that plaintiff was guilty of contributory negligence, in that, at the time of the accident, he did not use a wooden prop or standard, alleged to have been

furnished by defendant with instruction to place it under the tram or track, to sustain the loaded tramcar while being dumped.

One Randall, a witness for the defendant, testified that he was plant foreman of the granite company; that during the time the tramcar was in operation, about the third day the car was used, he caused a tie 6x6 to be sawed off the proper length to fit under the tramcar; that he talked with Clinkscales about this prop, and helped put it under the track; that he told Clinkscales he thought it was necessary to keep this 6x6 under the track as a support; that he observed several times they were neglecting to use it; that he called their attention to the fact as many as a dozen times; that Clinkscales was there when this 6x6 was put under the track the first time; that the purpose of this support was to make the track safe to hold up the rails; that this 6x6 was not under the track at the time the accident occurred.

One Krause, witness on behalf of defendant, testified that he was at the plant when this accident happened, and had seen this prop in place; that it was not safe to dump the tram without it.

One Londeen, a witness for defendant, testified that he had seen this prop; that he was engineer on the Illinois Central, and moved out the gondola car which was being loaded at the time of the accident; and, in substance, that this prop was not in use at the time of the accident but was covered with sand in the other end of the gondola car.

One Hewson, superintendent of the company, testified that the 6x6 standard to be placed under the track was provided within a few days after the work started.

On the other hand, the following testimony appears in the record, and is in direct conflict with this testimony of the defendant:

Oscar Holm, a witness for the plaintiff testified:

"This brace was not used by Clinkscales and I at the time the rails broke. Q. But you had been using it unloading this car? A. After the accident. We had not been using it on the car before the accident. We had not been using it on the car. Mr. Randall, the foreman had not said anything to us before the accident about using this 6x6 under the track. I do not know

where this 6x6 was at the time of the accident. It was not in the railroad car a little further up."

Plaintiff himself testified:

"I heard the testimony of Randall that he told me to put a post under the railroad track. He never told me at any time to put a post under the track. Mr. Randall did not tell me. He never told me about putting a brace under the track at any time. There was no 6x6 standard there to brace under the track where we were dumping. I never saw or heard of one. This is the first time I ever heard of it."

Defendant's witness Higgins testified:

"I did not specifically instruct it (the 6x6) to be place there. Q. Will you kindly explain to the jury why you did not tell Mr. Clinkscales when he told you the rails were bending, to use the 6x6 standard you had provided for it? A. They did not provide that standard for some days afterwards. Q. Then you did not get it there the first day or so, as Mr. Randall testified? A. I do not remember just exactly when, but it was within a few days."

This testimony is quoted to show that there was a direct conflict in the evidence of plaintiff's and defendant's witnesses, as to the facts upon which defendant seeks to charge plaintiff with contributory negligence. Upon this appeal from the order denying defendant's motion for a directed verdict, the conflict in this evidence must be resolved in favor of plaintiff.

It follows that the trial court did not err in overruling defendant's motion for a directed verdict. The order and judgment of the trial court must be affirmed.