DEGEN, Respondent v. BAYMAN, Respondent v. OUTBOARD MARINE CORPORATION, Appellant

(241 N.W.2d 703)

(File Nos. 11336-11338. Opinion filed May 13, 1976)

**Franklin J. Wallahan** of **Hanley, Wallahan & Murray**, Rapid City, for plaintiff and respondent, Norbert Degen; and for plaintiff, appellant and cross-respondent, William Degen.

**William G. Porter** of **Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell**, Rapid City, for Donald Bayman.

**H. L. Fuller** of **Woods, Fuller, Shultz & Smith**, Sioux Falls, **George Beal**, Rapid City, for Outboard Marine Corp.

MYDLAND, Circuit Judge.

This the second time this case has been before this court. See Degen v. Bayman & Outboard Marine, 86 S.D. 598, 200 N.W.2d 134. There we held that the case had to be retried because of improper statments made by counsel in closing argument. We also held that defendant Donald Bayman was not entitled to indemnity from defendant Outboard Marine Corporation.

The facts of this case are fully set out in our earlier opinion in Degen v. Bayman, supra. Since they are set out there, we will only summarize them here. Plaintiff William J. Degen was severely injured when a 210 h.p. boat manufactured by defendant Outboard Marine backed over him and struck his legs with its propeller. The accident occurred July 28, 1968, on Sheridan Lake in Pennington County. The operator of the boat was Donald Bayman. Bayman had borrowed the boat from his employer. He had driven the boat at least twice previously and had been operating it on Sheridan Lake for some time prior to the accident. The boat was equipped with an automatic push-button transmission mounted near the throttle control on the right side of the boat. The shift positions were "forward," "neutral" and "reverse." The evidence is undisputed that the boat was designed to start in any gear. There was also no warning in the boat to the effect that the boat would start in gear.

At the first trial, William Degen charged Bayman with negligent operation of the boat and Outboard Marine with negligent design of the boat, failure to give an adequate warning of the danger and breach of an implied warranty of merchantability or fitness for intended use. Later a cause of action against Outboard Marine was added alleging strict liability under § 402A, Restatement, Second, Torts.

During the trial of the first case, Bayman settled with William Degen for $65,000, and Degen's mother as his guardian executed a release relieving Bayman of any further liability to William Degen as a result of the accident. The jury then found both Bayman and Outboard Marine liable and set Degen's damages at $380,000. We then considered the case on appeal, reversed and remanded it for a new trial.

At the second trial, Outboard Marine, which had previously filed a cross claim against Bayman, chose to drop its cross claim and was granted an order by the trial judge whereby Bayman was denied active participation in the new trial except as a witness. Norbert Degen, the father of William Degen, sought to recover the cost of the medical expenses relating to his son's injury. Norbert Degen settled with Bayman for $10,000 and executed a release to Bayman relieving him of further liability. Norbert Degen sued Outboard Marine for the medical expenses and this suit was consolidated with the retrial of William Degen's suit against Outboard Marine.

The case was tried to a jury with Bayman participating only as a witness. The jury again found for William Degen and against Outboard Marine. The jury also found for Norbert Degen and against Outboard Marine in his suit for medical expenses. The lower court judge advised the jury in his instructions that William and Norbert Degen had both settled with Bayman for an unspecified amount of money. The jury was instructed, "If you find for the Plaintiffs and against the Defendant, you must award to each of the Plaintiffs the total amount of damages which they sustained by reason of the accident. You may not make any deduction whatsoever therefrom by reason of the settlement as you have not been instructed concerning what amount was paid by Donald Bayman to the Plaintiffs in connection therewith."

Pursuant to this instruction, the jury determined that William Degen's total damages amounted to $100,000 and that the total  due Norbert Degen for medical expenses was $22,658.35. The judge then deducted the money settlements paid by Bayman, plus accrued credits, and gave judgment to William Degen in the amount of $32,969.63. He deducted the $10,000

settlement from the verdict of $22,658.35 and entered judgment for Norbert Degen in the amount of $12,658.35.

There are three separate appeals from these cases before this court. In No. 11337, William Degen appeals and alleges numerous assignments of error at the trial. No. 11338 involves a cross appeal by Outboard Marine assigning as error the trial judge's refusal to grant its motion for a directed verdict against William Degen. In No. 11336, Outboard Marine appeals from the judgment against it in favor of Norbert Degen. In each case the judgment of the trial court is affirmed.

William Degen presents numerous assignments of error. We will discuss only two in this opinion as we find the rest to be without merit.

Degen assigns as error the trial court's refusal to give the jury his prepared instructions concerning loss of earning capacity, personal inconvenience and loss of ability to enjoy life because of his injuries. The court gave the following instruction, which was numbered 22:

> "If you decide for the Plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate Plaintiff William J. Degen for any of the following elements of detriment or damage proved by the evidence to have resulted from the negligence or breach of warranty of the Defendant, whether such detriment could have been anticipated or not, namely:
>
> 1. The nature, extent and duration of the injury.
>
> 2. The disability experienced and reasonably certain to be experienced in the future as a result of the injury.
>
> 3. The pain, suffering and mental anguish experienced and reasonably certain to be experienced in the future as a result of the injury.

4. The reasonable expense of extra shoes, shoe lifts and prescriptions for the same which he has incurred and which are reasonably certain to be incurred in the future.

5. The time lost from his employment and from pursuing his normal activities since his injury, wherein he has been unable to pursue his occupation and normal activities. In determining this amount, you should consider evidence of his earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he was reasonably certain to have earned in the time lost had he not been disabled.

6. Such sum also as will compensate him reasonably for whatever loss of earning capacity you find that he has suffered as a result of his injury.

7. The reasonable expense of necessary medical care, treatment and services received by him since he reached the age of eighteen, his age of majority, and the reasonable expense of medical care, treatment and services reasonably certain to be received in the future.

"Whether any of the foregoing elements of damage have been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guesswork, conjecture or sympathy."

■Although Degen's requested instruction on loss of earning capacity differed in some respects from the above instruction given by the court, we do not consider the court's refusal to be error. This court has consistently held that jury instructions must be considered as a whole in determining if error was committed in giving or refusing to give certain instructions. Duprel v. Collins, 1914, 33 S.D. 365, 146 N.W. 593; Pollman v. Ahrens, 1974, 88 S.D. 249, 218 N.W.2d 475. We have therefore examined instruction No. 22 and we are convinced that the elements of detriment

or damage relating to lost earning capacity are sufficiently stated.

■It is settled law in South Dakota that a jury award for personal injury cannot be based upon speculation or conjecture. Kressly v. Theberge, 1961, 79 S.D. 386, 112 N.W.2d 232, and Koenig v. Weber, 1970, 84 S.D. 558, 174 N.W.2d 218. We conclude that the instruction set out above properly apprised the jury of the elements of damage for loss of earning capacity so as to enable the jury to determine a reasonable award that was not based upon speculation or conjecture. Degen's requested instructions did not substantially vary from the instructions given by the court, but merely amplified those instructions. As we said in Peters v. Hoisington, 1949, 72 S.D. 542, 37 N.W.2d 410: "It was not error to refuse to amplify the instructions given which substantially cover the principle embodied in the requested instructions."

■ The same reasoning applies to Degen's proposed instruction on personal inconvenience and inability to enjoy life. Although the court refused Degen's instruction, it did fully instruct the jury on damages for pain, suffering and mental anguish, as well as for time lost from pursuing normal activities. While the specific words "personal inconvenience and loss of ability to enjoy life" were not used, their meaning was embodied therein. Had the court given the refused instruction, it would have been only cumulative of those already given and might very well have only confused the jury in its deliberations. We find no error in the court's refusal to give this instruction.

After the jury had determined Degen's total damages, the court deducted Bayman's settlement from the jury verdict before entering judgment. Degen assigns this as error. He maintains that the settlement should not have been deducted from the verdict under South Dakota law. South Dakota has adopted the Uniform Contribution Among Tort-feasors Law which is found at SDCL 15-8-11 through 15-8-22. The lower court reduced Degen's verdict pursuant to SDCL 15-8-17 which provides as follows:

"*Joint tort-feasor not discharged by release of*

*another— Claim reduced by amount stated in release. —* A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; *but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release,* or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." (emphasis supplied)

Degen maintains that this section is not applicable since there was never a determination made that Bayman and Outboard Marine were joint tort-feasors as defined by SDCL 15-8-11.

We cannot accept this contention for two reasons. First, this court, after reviewing the evidence from the first trial, held in Degen v. Bayman, supra, that Bayman was not entitled to indemnification from Outboard Marine. In that opinion we stated:

"Viewed most favorably, Bayman's conduct consisted of not less than acts of omission in his duty to plaintiff which contributed to the proximate cause of the injury. His negligence was more than passive or vicarious. Being in pari delicto, he was in no position to shift the entire liability to Outboard Marine. Indemnity was not an issue and the trial court should have dismissed Bayman's claim therefor." 86 S.D. at 605, 200 N.W.2d at 138.

Second, Degen's amended pleadings alleged that Bayman and Outboard Marine were joint tort-feasors. We adopt the view of the Supreme Court of North Dakota as stated in Levi v. Montgomery, 1963, N.D., 120 N.W.2d 383, that where there has been no other clear determination as to whether two parties are joint tort-feasors the plaintiff's pleadings should control:

"Thus the question at issue between the parties is determined by the pleadings. Even though the plaintiff now contends that he, in fact, had no cause of action in

tort against one of the defendants, the court will consider the issues as framed by the pleadings. Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant." 120 N.W.2d at 388-389.

In view of our previous determination of liability in Degen v. Bayman, supra, and the amended pleadings filed by Degen in this action, we find that SDCL 15-8-17 is applicable and that the lower court was correct in deducting Bayman's settlement from the jury verdict.

Outboard Marine contends in its cross appeal that the lower court erred in not granting its motion for a directed verdict against William Degen. It urges that there was insufficient evidence at the trial to sustain liability against it on any of Degen's three theories. In our review of the denial of the motion for a directed verdict, "this court will assume that the evidence of the party against whom a (directed) verdict is demanded is undisputed, and will also give such evidence that construction which is most favorable to such party." Clinkscales v. Wisconsin Granite Co., 1916, 38 S.D. 205, 212, 160 N.W. 843, 845. In the instant case, we have examined the record in the light most favorable to the plaintiff William Degen. We find that on the basis of the testimony of both his lay witnesses and his expert witness that there is sufficient evidence to sustain Outboard Marine's liability based on any one of the three theories alleged by Degen. There is competent evidence that the unsafe design of the boat and Outboard Marine's failure to give a warning of the fact that the boat would start in gear were the proximate causes of the injury which William Degen suffered. It should be noted that the question of Outboard Marine's liability has been considered by two different juries and both have arrived at the same conclusion as to liability and have returned verdicts against Out-

board Marine. Clearly, the trial court was justified in denying its motion for a directed verdict.

Outboard Marine has also appealed from the judgment against it in the suit by Norbert Degen for recovery of the medical expenses incurred as a result of William Degen's injury. It raises three issues in this appeal. First, it maintains that the court erred in not directing a verdict in its favor against Norbert Degen. The issue was discussed above in connection with William Degen's suit and will not be repeated, except to say that in view of the evidence the court was justified in refusing to direct a verdict against Norbert Degen.

It is uncontroverted that sometime after the accident on July 28, 1968, William Degen was treated at the Shriners Hospital for Crippled Children in Minneapolis, Minnesota, for the injury to his legs as a result of the accident; that the reasonable value of these medical services was $13,490 and that these services were rendered to William Degen free of charge. In light of this, Outboard Marine maintains that the court erred in allowing Norbert Degen to recover a total of $22,658.35 in medical expenses when $13,490 of those expenses did not have to be paid by Norbert Degen. A determination of this issue involves consideration of the so-called "collateral source rule" which has been adopted in many jurisdictions. The rule was stated concisely at 22 Am.Jur.2d, Damages, § 207.

> "The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury. This is a recovery for their value and not for the expenditures actually made or obligations incurred. Thus, under this general rule, the fact that the medical and nursing services were rendered gratuitously to the one who was injured will not preclude the injured party from recovering the value of those services as a part of his compensatory damages. Accordingly, the plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the

defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company."

The rationale for this rule is that a tort-feasor should not be allowed to benefit because the victim of his wrongdoing was able to receive gratuitous medical and nursing services for his injuries. This rule is followed in many jurisdictions including Minnesota. See Dahlin v. Kron, 1950, 232 Minn. 312, 45 N.W.2d 833; Dyson v. Schmidt, 1961, 260 Minn. 129, 109 N.W.2d 262. This court feels that the rule and the rationale behind it are sound. See Moore v. Kluthe & Lane Ins. Agency, Inc., 1975, 89 S.D. 419, 234 N.W.2d 260. Accordingly, we hold that where the victim of a tort-feasor receives gratuitous medical services from a source wholly independent of the tort-feasor the value of the gratuitous medical services may not be deducted from the verdict for overall medical care received. This rule is no less applicable here where Norbert Degen assumed responsibility for the medical bills of his son and sued for recovery in his own name. Under our law he was legally obligated to pay the medical bills and then seek recovery from the tort-feasor. See SDCL 25-7-7 and Doyen v. Lamb, 1953, 75 S.D. 77, 59 N.W.2d 550. Thus, when a parent pays the medical bills for an injured child and some of the medical services are rendered gratuitously, the collateral source rule applies, and no deduction is allowed for the gratuitous services. See Evans v. Pennsylvania Railroad Company, 1957, D.C.Del., 154 F.Supp. 14. In the instant case the court properly refused to deduct the $13,490 in medical services provided by the Shriners Hospital for Crippled Children from the overall verdict for medical expenses.

Outboard Marine also makes the claim that the court erred in allowing it only a pro tanto credit of $10,000 (the amount of the Bayman settlement) rather than a pro rata credit of one-half of the verdict (or $11,329.17) in entering judgment on the jury verdict of $22,658.35 in the Norbert Degen suit. At this point, reference must again be made to SDCL 15-8-17 which was quoted above in its entirety. That section states that the claim should be reduced by the consideration received for the release "or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

The release which Norbert Degen signed in consideration of the $10,000 paid by Donald Bayman was silent on the question of apportionment of liability. Outboard Marine asserts that it and Bayman were both 50% liable and therefore the verdict for Norbert Degen should be reduced by one-half. We disagree. There was never a jury determination as to the proportionate liability of Bayman and Outboard Marine. The reason is that Outboard Marine dropped its cross claim for contribution against Bayman and sought and was granted an order barring Bayman from participation in the second trial except as a witness. Since Outboard Marine was the party which dropped the cross claim and sought the order, it cannot now assert that each tort-feasor was 50% responsible for William Degen's injuries. Therefore, in accordance with SDCL 15-8-17, the trial court was correct in deducting Bayman's actual settlement from the verdict rather than reducing the verdict by one-half.

The judgments of the circuit court are in all respects affirmed.

WINANS, WOLLMAN and COLER, JJ., concur.

DUNN, C. J., dissents.

MYDLAND, Circuit Judge, sitting for DOYLE, J., who, prior to his death, disqualified himself from taking part in the decision in this action.

DUNN, Chief Justice (dissenting).

I would remand for a new trial on damages only.

The failure of the trial court to give Degen's requested instructions on determining lost earning capacity and on personal inconvenience and loss of ability to enjoy life as a result of the injury was prejudicial. The general charge on damages did not sufficiently cover these items.* In reaching this conclusion, I am cognizant of the fact that the jury in the first trial, where the

---

* See South Dakota Pattern Jury Instruction 30.07-1(B) and Committee Comments thereto.

above mentioned instructions were given, found damages in the amount of $380,000. The jury's award of $100,000 in the second trial is no small amount, but I feel that the error in failing to properly instruct the jury in the second trial, coupled with the wide disparity in verdicts, warrants a new trial on damages.

