788 F.2d 485
 Glen CARR, Appellant,
v.
KORKOW RODEOS, a/k/a Korkow Rodeos, Inc., Ervin Korkow,
Donald Korkow, James Korkow, South Dakota 4-H
Finals Rodeo Assn., Paul M. Cowan, a/k/a
Willie Cowan, Appellees.
Glen CARR, Appellee,
v.
KORKOW RODEOS, a/k/a Korkow Rodeos, Inc., Ervin Korkow, Appellants,
Donald Korkow, James Korkow, South Dakota 4-H, Paul M.
Cowan, a/k/a Willie Cowan, Appellants.
 Nos. 85-5080, 85-5121.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1985.
Decided April 7, 1986.
Rehearing and Rehearing En Banc Denied May 7, 1986.
 
 Gregory A. Eisland, Rapid City, S.D., for appellant.
 Franklin J. Wallahan, Rapid City, S.D., for appellees.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and McMANUS,* District Judge.
 LAY, Chief Judge.
 
 
 1
 This diversity case arises from a jury verdict of $1,250,000 in favor of Glen Carr, who became a paraplegic at age sixteen from injuries sustained in a 4-H rodeo competition. Carr appeals the district court's[1] application of South Dakota's Contribution Among Joint Tortfeasors Act, S.D.Codified Laws Ann. Secs. 15-8-11 to 15-8-22 (1984), to apportion the verdict equally among six defendants who settled with Carr before trial and three who were found liable by the jury. The result was to reduce the amount of the jury verdict by two-thirds to $416,250. The three judgment defendants cross-appeal on several grounds, claiming inter alia that there was insufficient evidence to support the jury's verdict of negligence and that the weight of evidence at trial established affirmative defenses relieving them of liability for Carr's injuries. We affirm the district court's entry of judgment on the jury verdict as to the judgment defendants' negligence liability. We vacate, however, the district court's judgment interpreting South Dakota law to require a pro rata damage apportionment and direct that the district court instead deduct pro tanto from the awarded damages the amount paid to Carr by the six settling parties.
 
 Background
 
 2
 On August 23, 1980, Carr suffered severe back injuries which resulted in paraplegia when the horse he was riding landed on top of him while he competed in a bareback bronc riding event at the 1980 South Dakota 4-H Finals Rodeo. Seeking damages for his injuries, Carr sued thirteen individuals,[2] two of whom were dismissed before trial. Six of the defendants settled before trial, collectively paying Carr $125,500 and executing separate but nearly identical settlement agreements. At trial, two of the remaining five defendants were found not liable and the other three (collectively referred to hereafter as "Korkow") were found negligent by the jury, which awarded Carr $1,250,000 in damages. Cross-claims brought by the Korkow defendants against the settling defendants were voluntarily dismissed before trial. The jury's general verdict did not apportion liability among the Korkow defendants nor as between the Korkow and the settling defendants. The district court, which had earlier denied Korkow's motion for a directed verdict, entered judgment against the Korkow defendants and denied Korkow's motions for judgment n.o.v. or a new trial.
 
 
 3
 The district court then, upon Korkow's motion, interpreted the settlement agreement provisions under South Dakota law to require that the jury's damage award be allocated pro rata equally among the nine settling and judgment defendants and that the two-thirds portion thus attributable to the settling defendants should be deducted from the awarded damages for a final assessment against the Korkow defendants of $416,250.[3] The district court rejected Carr's argument that South Dakota law directs that the verdict should have been reduced pro tanto by the $125,500 Carr had received in settlement, for a final judgment against the Korkow defendants of $1,124,250. Carr appeals the district court's pro rata reduction of the jury verdict; the Korkow defendants cross-appeal the district court's denial of their motions for a directed verdict, judgment n.o.v., or a new trial.
 
 Discussion
 
 4
 Denial of motions for directed verdict, judgment n.o.v., or new trial.
 
 
 5
 We turn first to the Korkow defendants' claims on cross-appeal that the trial court erred in denying their motions for a directed verdict, judgment n.o.v., or new trial. After reviewing the record and the parties' arguments, we conclude that there was sufficient evidence presented at trial to sustain both the jury's negligence findings and its determination that the Korkow defendants had not as a matter of law proved their alleged affirmative defenses, including assumption of risk, contributory negligence, and waiver of liability. The jury had before it ample evidence that the judgment defendants inadequately supervised the rodeo and supplied unsuitable riding stock. There was evidence that Carr was ordered to "hurry up" and to commence his ride although the horse was in an unstable position before its release from the chute. Evidence also existed that the release form on which Carr's alleged waiver of liability was premised provided only for a release of liability by the rider's parents, not by the rider.
 
 
 6
 Although it is true that evidence to the contrary exists in the record, in considering the sufficiency of the evidence to support the jury's findings, all reasonable inferences fairly deducible from the facts proven by the plaintiff must be drawn in Carr's favor as the non-moving party. Sprynczynatyk v. General Motors Corp., 771 F.2d 1112, 1125 (8th Cir.1985), SNCO Barge Lines, Inc. v. Anderson Clayton & Co., 745 F.2d 1188, 1192 (8th Cir.1984). Given this narrow standard of review, we hold that there was sufficient evidence from which the jury could find that the defendants acted in a negligent manner proximately causing Carr's injury and that there was sufficient evidence for the jury to determine that recovery of damages for his injuries was not barred by an assumption of the risk of injury, waiver of liability, or contributory negligence. Based on this evidence, the district court did not err in denying Korkow's motions for a directed verdict, judgment n.o.v., or new trial. The district court's entry of judgment on the jury verdict relating to the liability of the Korkow defendants is affirmed.[4]
 
 Apportionment of Damages
 
 7
 We turn now to Carr's appeal, which raises the question whether the district court erred in its application of South Dakota law to interpret the releases executed by the settling defendants as requiring a pro rata reduction of the jury award. We recognize that in diversity actions raising questions of local law, deference should be accorded the trial judges' decisions. We are not, however, inflexibly bound by a district court's interpretation of state law, since to be so bound would be an abdication of our appellate responsibilities. We must, therefore, reverse when our analysis demonstrates an erroneous application of state law by the district court. See Shidler v. All American Life & Financial Corp., 775 F.2d 917, 920 (8th Cir.1985); Luke v. American Family Mutual Insurance Co., 476 F.2d 1015, 1019-20 (8th Cir.1972), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973).
 
 
 8
 The release executed by the settling parties provides, in pertinent part:
 
 
 9
 This Release is given under, pursuant to and consistent with the South Dakota Uniform Contribution Among Tortfeasors Law, SDCL 15-8-11 through 22. Thus, it is specifically acknowledged and agreed that this Release does and shall be construed to release [settling defendant] in full, and further, that any sums or damages recovered against any other parties or any other persons who may be claimed to be joint tortfeasors * * * shall be reduced in the sum of [amount], or alternatively, in such sum as shall be the extent of the pro rata share of any fault or liability on the part of [settling defendant] for damages to Glen Carr or Keith Carr, however, [sic] the same may be determined, and whichever sum shall be larger.
 
 
 10
 The parties do not dispute that the release is controlled by the provisions of South Dakota's version of the Uniform Contribution Among Joint Tortfeasors Act (UCAJTA) and that the release specifically incorporates language from two of that statute's provisions, S.D.Codified Laws Ann. Secs. 15-8-17[5] and 15-8-18.[6] Nor is it disputed that under South Dakota law, the jury's damage award should have been reduced to take into account the amounts received in settlement by Carr from the six settling defendants. The issue here is by what amount the jury verdict should properly be reduced.
 
 
 11
 The district court found that the six settling defendants and three judgment defendants are "joint tortfeasors" for purposes of applying South Dakota's version of the UCAJTA. See Carr, 610 F.Supp. at 26-28. Next, the district court held that the phrase "pro rata" as used in the releases compels that, in the absence of a determination of the respective fault or liability of each tortfeasor, the total jury award should be apportioned equally among all the joint tortfeasors and reduced by the proportion attributable to those joint tortfeasors who settled with the injured party before the jury returned its verdict. Id. In so holding, the district court accepted Korkow's argument that calculation of the "pro rata share of any fault or liability" on the part of the settling defendants for damages to Carr is not dependent on any finding made by a trier of fact. Unless that provision is interpreted to attribute equal shares to each joint tortfeasor when no relative fault determination has been made by the jury, Korkow argues, settlements will not have their intended finality, settling defendants are unfairly dragged into extended litigation when by the settlement terms their contribution liability has already been extinguished, and greater liability for Carr's damages is imposed on the judgment defendants than is their fair share.
 
 
 12
 Under South Dakota law, in determining the pro rata shares of a damage award for which each of several joint tortfeasors is liable when none of those tortfeasors has executed a release with the injured party, the relative fault of each of the joint tortfeasors must be considered. See S.D.Codified Laws Ann. Sec. 15-8-15. To determine relative fault for such contribution purposes, the South Dakota legislature has further specifically provided that "[a]s among joint tort-feasors against whom a judgment has been entered in a single action, the provisions of Sec. 15-8-15 apply only if the issue of proportionate fault is litigated between them by cross-claim, counterclaim, or third party claim in that action." S.D. Codified Laws Ann. Sec. 15-6-14(a). Here we deal not simply with the apportionment of the damage award among joint tortfeasors, but also with the operation of a release of some joint tortfeasors upon that damage award. In light of these circumstances, we find that under South Dakota law a pro rata damage apportionment for purposes of contribution among the joint tortfeasors here is dependent on a determination by a trier of fact of the relative fault of all joint tortfeasors
 
 
 13
 This result is mandated by the South Dakota Supreme Court's decision in Degen v. Bayman, 90 S.D. 400, 241 N.W.2d 703 (S.D.1976). The district court below attempted to distinguish Degen, stating that:
 
 
 14
 Since the settlement in Degen [of $65,000] was larger than the pro rata share ($100,000.00 verdict/2 accused tort-feasors), the pro tanto result was compelled because the settlement amount was larger. SDCL 15-8-17. Therefore, the Degen Court did not rule whether the reduction is always pro tanto.
 
 
 15
 Carr, 610 F.Supp. at 27. However, the district court's analysis misreads Degen. It fails to note that in Degen there were two plaintiffs, an injured son and his father, two defendants, and two verdicts in which contribution was at issue. One verdict was in favor of the son, compensating for his injuries, and totalled $100,000. That verdict was reduced by $65,000, the amount paid in settlement by one of the defendants. The son appealed, claiming that Sec. 15-8-17 did not apply because the settling defendant had never been found liable as a tortfeasor by the jury. Therefore, the son argued, the $100,000 verdict should not have been subject to any reduction at all, let alone reduced by $65,000. The South Dakota Supreme Court concluded otherwise, finding that by suing both the settling and the judgment defendants the son had in his pleadings designated both as joint tortfeasors for contribution purposes, even though there had been no judicial finding to that effect. See Degen, 241 N.W.2d at 707-08.
 
 
 16
 The second verdict in Degen was derived from the father's suit to recover his son's medical expenses. The joint tortfeasor who had previously settled with the injured son also settled with the father for $10,000 before the jury rendered its verdict. The remaining judgment defendant sought to reduce the jury's $22,658 award for medical expenses by a one-half pro rata credit of $11,329, asserting that as joint tortfeasors each sued defendant was fifty percent liable for the son's injuries. The South Dakota Supreme Court rejected this argument, stating that:
 
 
 17
 The release which Norbert Degen signed in consideration of the $10,000 paid by Donald Bayman was silent on the question of apportionment of liability. * * * There was never a jury determination as to the proportionate liability of Bayman and Outboard Marine. The reason is that Outboard Marine dropped its cross claim for contribution against Bayman and sought and was granted an order barring Bayman from participation in the second trial except as a witness. Since Outboard Marine was the party which dropped the cross claim and sought the order, it cannot now assert that each tortfeasor was 50% responsible for William Degen's injuries. Therefore, in accordance with SDCL 15-8-17, the trial court was correct in deducting Bayman's actual settlement from the verdict rather than reducing the verdict by one-half.
 
 
 18
 Degen, 241 N.W.2d at 709. The South Dakota Supreme Court, in the context of the second medical expenses verdict, squarely placed responsibility for obtaining an adjudicated pro rata fault determination on the judgment defendant.[7]
 
 
 19
 We think the South Dakota Supreme Court's language in Degen is conclusive of the issue raised here. In applying a state statute, federal courts are bound by the construction given that statute by the highest court within the state. Slaaten v. Cliff's Drilling Co., 748 F.2d 1275, 1277 (8th Cir.1984). Contrary to the district court's statement, the South Dakota court in Degen did decide the issue before us and that decision is controlling here. Under the facts of this case, it is clear that a pro tanto deduction is required. If the jury here had made findings, by special interrogatories or by cross-claims, as to the relative fault of the settling and judgment defendants, the "pro rata shares of any fault or liability" of all the joint tortfeasors would be determinable. The remainder left after deducting the settling defendants' pro rata shares could then be compared with the amount resulting from a pro tanto reduction of the amount paid in settlement to determine which method reduced the award by a greater amount. Without such an adjudication, however, the release language as interpreted under South Dakota law makes no provision for invoking anything other than a pro tanto reduction.
 
 
 20
 The district court's holding that a pro rata reduction was required here was also based on its reasoning that Carr presumably intended that the terms of S.D. Codified Laws Ann. Sec. 15-8-18 be triggered to accomplish extinguishment of any right of contribution from the settling defendants, and that it would be unfair to the settling defendants to find that they have purchased a second lawsuit with their $125,500 settlement. See Carr, 610 F.Supp. at 28. We believe that this analysis fails to consider the fact that although the releases may have been intended to extinguish the right of contribution from settling tortfeasors, the releases could do so only if the preconditions set out in the statute have been met. Merely providing in the release that the right of contribution from the settling defendants is extinguished is not sufficient to bar an action by the judgment defendants against the settling defendants for contribution. Section 15-8-18 provides that the only manner in which a release can extinguish the judgment defendants' right of contribution from the settling defendants is if the release (1) is given before the right of the other tortfeasors to secure a money judgment for contribution has accrued and (2) provides for a reduction to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors. See supra note 6. The release involved here instead provides that the verdict reduction is to be "in such sum as shall be the extent of the pro rata share of any fault or liability on the part of [settling defendants] for damages to Glen Carr or Keith Carr however the same may be determined" (our emphasis). This provision clearly contemplates that there be a determination of fault or liability, which can only be accomplished by a finder of fact, in order for pro rata shares to reduce the verdict.
 
 
 21
 The district court's analysis also contradicts the parties' express acknowledgement in the release that Carr promised to indemnify and hold harmless the settling parties for any claims of other persons for contribution or indemnity "it being specifically understood that there shall be no obligation on the part of any of the parties hereby released to defend or prosecute those matters further in connection with any said claim for contribution or indemnity." The indemnification clause thus acknowledges that the release does not compel a pro rata reduction of the verdict in lieu of a pro tanto reduction until such time as the relative fault or liability of all joint tortfeasors has actually been adjudicated.
 
 
 22
 In the present case, the judgment defendants did have cross-claims against some of the settling defendants but voluntarily dismissed them before trial. We need not speculate whether the judgment defendants may still be able to seek contribution by another action against the settling defendants. The only concern before us here is whether or not the defendants are entitled to a pro rata or a pro tanto reduction of the damages. We find only that under this release, applying South Dakota law, the Korkow defendants are entitled to a pro tanto, not a pro rata, reduction of the verdict and that the district court erred in holding otherwise.
 
 Conclusion
 
 23
 We find that the district court erred in apportioning the jury award equally among the nine joint tortfeasors and reducing the jury's award by two-thirds as the amount attributable to the six settling defendants. The judgment of the district court is vacated, and the district court is directed to enter judgment reducing the amount of the jury verdict pro tanto by the monetary amount paid to Carr by the settling defendants.
 
 
 
 *
 The HONORABLE EDWARD J. McMANUS, Senior United States District Judge for the Northern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, presiding
 
 
 [2]
 Carr originally sued fourteen individuals; two were later realigned as one defendant
 
 
 [3]
 See Carr v. Korkow, 610 F.Supp. 25 (D.S.D.1985)
 
 
 [4]
 The Korkow defendants further contend that the district court erred in finding that diversity jurisdiction existed here. In a pre-trial order denying defendants' motion to dismiss, the district court analyzed the factual basis upon which diversity jurisdiction was predicated. It found that Glen Carr had abandoned his former domicile in South Dakota and now resides and attends school in Arizona, in large part for health reasons related to his paraplegia. Under these facts, we find that the district court correctly held that Glen Carr had changed his domicile to Arizona and that diversity of citizenship existed
 The defendants also claim that it was error for the court to refuse to give their proposed instruction on independent intervening causation and to instruct the jury that it could not consider as evidence the questions asked by counsel of the witnesses during trial. After reviewing the record and the parties' arguments, we find that Korlow's assignments of alleged error have no colorable merit.
 
 
 [5]
 S.D.Codified Laws Ann. Sec. 15-8-17 provides:
 A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.
 
 
 [6]
 S.D.Codified Laws Ann. Sec. 15-8-18 provides:
 A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all the other tort-feasors.
 
 
 [7]
 Similarly, in Duncan v. Pennington County Housing Authority, 283 N.W.2d 546 (S.D.1979), appeal after remand, 382 N.W.2d 425 (S.D.1986), pro rata reduction was premised on the jury's findings, answering by special interrogatories, of the relative fault of all of the settling and judgment defendants. See Duncan, 283 N.W.2d at 550. The issue facing the South Dakota Court in Duncan was how a settlement should be treated for purposes of reducing a damage award when that settling defendant was found not liable by the jury through special interrogatories. However, neither in Duncan nor in Degen is there any support for determining pro rata shares based on anything but an adjudication of relative fault by a trier of fact