**C. B. PENNINGTON, Appellant,**

v.

**COLONIAL PIPELINE COMPANY,**
Appellee.

No. 24769.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1968.

Victor A. Sachse, Fernando J. Freyre, Breazeale, Sachse & Wilson, Baton Rouge, La., for appellant.

R. Gordon Kean, Jr., and Ben R. Miller, of Sanders, Miller, Downing & Kean, Baton Rouge, La., for appellee.

Before MARIS,* THORNBERRY and AINSWORTH, Circuit Judges.

PER CURIAM:

On July 16, 1956, appellant C. B. Pennington obtained from the landowner, T. L. Mills, Jr., a ten-year (primary term) oil, gas and mineral lease on a tract of land containing 2,425 acres situated in East Feliciana Parish, Louisiana. Appellant failed to sign the written lease but paid the annual delay rentals required

_____

* Of the Third Circuit, sitting by designation.

by the lease and recorded the document in the public records of East Feliciana Parish, Louisiana, on July 19, 1960.

Thereafter, on June 29, 1962, appellee Colonial Pipeline Company acquired from the landowner, Mills, a pipeline right of way across the 2,425-acre tract, and on July 26, 1962 acquired from the owner fee title to approximately 29 acres of this tract upon which it later erected pumping and storage facilities on 6 acres thereof. Colonial installed a 36-inch interstate pipeline along the right of way across the tract which became operational in October 1963. In June 1963 Pennington advised Colonial of his plan for geophysical survey of the property which called for 36 seismic dynamite shot points on the tract, 9 of which would be located on Colonial's 29 acres thereof.

Pennington contended that the operation of Colonial's facilities would interfere with his geophysical exploration and accordingly demanded that Colonial be ordered to shut down all operations on the property, drain all lines crossing the property, drain all storage tanks in the area, shut down all electrical service to the property and, if necessary, remove any structures that might interfere with the successful completion of his seismic survey of the property. Colonial denied the validity of the lease because it was never signed by Pennington as lessee and further contended that, even if valid, the mineral lessee's rights must coexist with those of Colonial and be exercised by each in such a manner as not to unreasonably interfere with the rights of the other; that Pennington's demands were totally unreasonable to a proper exercise of his rights under the lease.

The case was tried to the court without a jury with considerable testimony, much of it by experts, and the court in a well-considered opinion, with detailed findings of fact and conclusions of law, found that Pennington's demands were not in legal good faith and that he was not pursuing his lease rights in such a manner as not to unduly and unreasonably interfere with the rights of defend-

ant Colonial. The court found that the seismic evaluation of the property could be adequately made by appellant without locating any of the dynamite shot points on Colonial's property, but that if some of the shot points were desired on Colonial's property, they could be relocated on Colonial's property so long as they did not unreasonably interfere with Colonial's use of its property and could be located not less than 150 feet from any of its facilities so as not to create danger to them. That if such shot points be located on Colonial's property, Colonial should cause its pumps to be shut down and electric current cut off at the moment the dynamite is actually detonated in the shot point holes, but upon receiving at least thirty days' advance notice of the time such shots were to be made. Alternatively, Colonial was given the option to shut down its pumps and cut off its electricity for a two-day period in order that the seismic work could be done by appellant. In all other respects, Pennington's demands were denied, the court holding that there was absolutely no need whatsoever for Colonial to drain their storage tanks, drain their pipeline, or stop the flow of liquid through its pipeline for Pennington to carry on his geophysical survey of the tract.

This case involved issues of fact with a sharp conflict in the evidence between witnesses for plaintiff and defendant, especially among the experts. The findings of the district court were based on evidence of record after the judge, exercising his prerogative as a trial judge, resolved the testimony as a whole and gave each witness the weight and credibility which he thought merited by his testimony.

 As we said in Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774, 776:

"It is well settled that in order for a reviewing court to set aside findings of fact by a trial court sitting without a jury, it must be clearly demonstrated that such findings are without adequate evidentiary support in the record, or were induced by an erroneous

view of the law, and the burden of showing that the findings are clearly erroneous is on the one attacking them. The findings of a district court are not, therefore, lightly to be set aside, for the Court of Appeals is not a trier of facts, and does not substitute its own judgment for that of the trial court."

For findings to be clearly erroneous we must be left with a definite and firm conviction that a mistake has been committed. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); United States v. Oregon State Medical Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Smith v. M/V Gisna, 5 Cir., 1966, 362 F.2d 164.

We have no such conviction here for, to the contrary, we believe the findings of the district judge are amply supported by substantial evidence of record, are correct and should be affirmed.