**HUNT OIL COMPANY and Williams Oil Company, Plaintiffs and Appellees,**

v.

**Ivan H. and Shirley I. KERBAUGH, Defendants and Appellants**

Civ. No. 9586.

Supreme Court of North Dakota.

Aug. 2, 1979.

As Amended on Denial of Rehearing Aug. 22, 1979.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for plaintiffs and appellees; argued by Dean Winkjer, Williston.

Pringle & Herigstad, Minot, for defendants and appellants; argued by Herbert L. Meschke, Minot.

SAND, Justice.

Ivan and Shirley Kerbaugh appealed from an order of the district court enjoining them from interfering with geophysical explorations carried on over their property by the plaintiffs, Hunt Oil Co. and Williams Oil Co. The Kerbaughs asserted the oil companies do not have an unlimited right to conduct seismic exploration over their prop-

erty and also that the record in this case was inadequate to grant the oil companies injunctive relief. We conditionally affirm.

This case involves geophysical exploration for oil and gas over approximately 1000 acres of land located in Williams County and owned by the Kerbaughs. The Kerbaughs acquired about 480 acres of this land in 1966 by way of a warranty deed which reserved in the grantor ". . . ALL of the minerals, including oil and gas, in and under or that may be produced and saved from said lands, together with the right of ingress and egress." The Kerbaughs own the remaining land under a 1972 contract for deed which also reserved in the grantor all the minerals under the land, together "with such easement for ingress, egress and use of the surface which may be incidental or necessary to use such rights."

The owners of the mineral estates in this case leased their oil and gas interests to Edward Mike Davis for a period of five years in 1974 and 1975, respectively.[1] Davis then conducted seismic exploration over the property in the early part of 1976. Ivan Kerbaugh testified that after the 1976 seismic activity, the flow from a spring which supplied water to his home and livestock, gradually decreased until it stopped in November 1976. Kerbaugh said he restored the flow of the spring, although at a reduced rate, at his own expense. Ivan also testified, that as a result of the 1976 exploration, open holes were left in his property, along with various types of debris.

In 1977, Davis assigned the oil and gas leases to Williams Exploration Co.,[2] who subsequently assigned a share of the same leases to Hunt Oil Co. The following summer the oil companies contracted with Pa-

---

1. The lease to Davis of the first tract of land was a form lease which provided:

   "Lessee shall pay for damages caused by his operation to growing ꞇcrops on said lands."

   The leases covering the remaining lands were on what appear to be identical forms, although the above provision was altered to read:

   "Lessee shall pay for damages caused by his operation ~~to growing crops~~ on said lands. & all surface & underground water"

2. The assignment by Davis provided in pertinent part:

   "This assignment is made subject to all the terms and the express and implied covenants and conditions of said leases, to the extent of the rights hereby assigned, which terms, covenants and conditions the Assignee hereby assumes and agrees to perform with respect to the lands covered hereby."

cific West Exploration Co. to conduct seismic exploration activities over certain lands in Williams County, including the Kerbaugh property. Pacific West Exploration contacted Ivan Kerbaugh for permission to conduct the exploration, offering to pay $50 per hole plus additional amounts for damages to growing crops. Kerbaugh rejected the offer and counteroffered with a request of $200 per hole, plus $1 per rod of tracks on the land, a commitment to cement shut any holes, and a guarantee of continued water supply. Although Kerbaugh later reduced his requests, they were rejected by Pacific.

When surveying for the exploration started, Kerbaugh requested the surveyors to leave until an agreement was reached as to compensation for damages to his surface rights. The oil companies then filed a summons and complaint seeking temporary and permanent injunctive relief restraining the Kerbaughs from interfering with the oil companies in the exercise of their rights under the oil and gas lease. Three affidavits were filed in support of the requested relief.

On 22 August 1978, the district court issued an order to show cause why Kerbaugh should not be restrained from interfering with the oil companies and issued an ex parte temporary injunction. Upon issuance of the temporary injunction, Pacific West Exploration commenced the seismic activities. The Kerbaughs thereafter filed a motion to vacate the ex parte temporary injunction which was granted after a hearing held 28 August 1978. On 7 September 1978 the show cause hearing on the permanent injunction was held, after which the district court entered an order granting the restraint.

Kerbaughs appealed from the order contending the record was inadequate to grant injunctive relief, and that the oil companies did not have an unlimited right under the mineral leases to enter upon the Kerbaugh property for extensive exploration activities, particularly in light of prior harm to the Kerbaugh property from such activities.

The oil companies contended in their brief and in oral argument before this court, that because they have concluded their exploration activities, the issues presented in this case are moot and the appeal should therefore be dismissed.

We have stated that a party who makes a motion for the dismissal of an appeal has both the burden of presenting a record proving the necessary facts, as well as sustaining the grounds thereon. *Verry v. Murphy*, 163 N.W.2d 721, 726 (N.D.1968). In this case the oil companies did not file an affidavit setting forth as a fact that the exploration activity has been completed. In addition, the permanent injunction is not limited in time. Consequently, the court is without a means of ascertaining as a fact that the exploration activities over the Kerbaugh property have been completed. The oil companies have failed to present a record proving the necessary facts in support of their argument of mootness. Thus we must deny their motion to dismiss and reach the issues presented for our review by the Kerbaughs.

The Kerbaughs argued the oil companies did not have an unlimited right to conduct seismic exploration over the Kerbaugh property.[3] This court in *Christman v. Emineth*, 212 N.W.2d 543, 550, 70 A.L.R.3d 366 (N.D.1973), adopted the general rule set forth in 58 C.J.S. Mines and Minerals § 159b

---

**3.** The Kerbaughs also asserted the oil companies did not have exclusive exploration rights over their property. They argued that although the leases executed by the mineral owners may have provided for the exclusive right to explore, no such exclusiveness provision was contained in the deeds reserving the mineral rights. We fail, however, to see the significance of the Kerbaughs' argument in this case. As the term "exclusive" is traditionally construed, it provides an oil and gas lessee, as against the

lessor, with the right to explore such property to the exclusion of all others, including the lesser. *See* 38 Am.Jur.2d, Gas and Oil, § 123. In this case, the Kerbaughs are not the lessors, nor, as the surface öwners, are they seeking the right to conduct exploration activities. Accordingly, the oil companies' right to conduct exploration activities to the exclusion of other explorers or miners in this case is not in issue. Rather, the real issue presented is the extent of the lessee's right to explore.

as to the implied rights of the mineral estate owner:

"'* * * unless the language of the conveyance repels such a construction, as a general rule a grant of mines or minerals gives to the owner of the minerals the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals * * *. The incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary exists in the case of a reservation of mineral rights as well as a grant.'"

We have also considered the rights of the lessee under the usual oil and gas lease. In *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 834 (N.D.1969), Chief Justice Teigen, speaking for the court, stated:

"Under a usual oil and gas lease, the lessee, in developing the leased premises, is entitled to use of the land reasonably necessary in producing the oil . . . .

"'Whether the express uses are set out or not, the mere granting of the lease creates and vests in the lessee the dominant estate in the surface of the land for the purposes of the lease; by implication it grants the lessee the use of the surface to the extent necessary to a full enjoyment of the grant. Without such use, the mineral estate obtained under the lease would be worthless. . . .' *Texaco, Inc. v. Faris,* 413 S.W.2d 147, 149 (Tex.Civ. App.1967)."

■ The above cases recognize the well-settled rule that where the mineral estate is severed from the surface estate, the. mineral estate is dominant. See Annot., 53 A.L. R.3d 16; 4 Summers, Oil and Gas, § 652; 58

C.J.S. Mines and Minerals § 159b. The mineral estate is dominant in that the law implies, where it is not granted, a legitimate area within which mineral ownership of necessity carries with it inherent surface rights to find and develop the minerals, which rights must and do involve the surface estate. Without such rights the mineral estate would be meaningless and worthless. Thus, the surface estate is servient in the sense it is charged with the servitude for those essential rights of the mineral estate.

■ In the absence of other rights expressly granted or reserved, the rights of the owner of the mineral estate are limited to so much of the surface and such use thereof as are *reasonably necessary* to explore, develop, and transport the minerals. See, *Union Producing Co. v. Pittman,* 245 Miss. 427, 146 So.2d 553 (1962); 58 C.J.S. Mines and Minerals § 159c; Annot., 53 A.L. R.3d 16 § 3[a]. In addition to, or underlying the question of what constitutes reasonable use of the surface in the development of oil and gas rights, is the concept that the owner of the mineral estate must have *due regard* for the rights of the surface owner and is required to exercise that degree of care and use which is a just consideration for the rights of the surface owner. *Getty Oil Co. v. Jones,* 470 S.W.2d 618, 621, 53 A.L.R.3d 1 (Tex.1971). *Union Producing Co. v. Pittman, supra;* 58 C.J.S. Mines and Minerals § 159c; Annot., 59 A.L.R.3d 16 § 3[c]. Therefore, the mineral estate owner has no right to use more of, or do more to, the surface estate than is reasonably necessary to explore, develop, and transport the minerals. *Union Producing Co. v. Pittman, supra;* 58 C.J.S. Mines and Minerals § 159c. Nor does the mineral estate owner have the right to negligently or wantonly use the surface owner's estate.[4] *See, Union Pro-*

<hr/>

4. This case does not present, nor does this opinion decide, the issue of whether or not the owner or lessee of the mineral estate is liable for damages arising from the reasonably necessary use of the surface incident to the exploration, development, and transportation of the minerals. The authorities which have considered the issue appear to be in agreement that such damages are *damnum absque injuria*

and no recovery can be had against the mineral estate owner or lessee. *See, Getty Oil Co. v. Jones, supra; Frankfort Oil Co. v. Abrams,* 159 Colo. 535, 413 P.2d 190 (1966); *Union Producing Co. v. Pittman, supra;* 4 Summers, Oil and Gas, § 652; Browder, The Dominant Oil and Gas Estate—*Master or Servant of the Servient Estate,* 17 S.W.L.J. 25 (1963). This conclusion seems to rest on a principle that injury neces-

*ducing Co. v. Pittman, supra;* 4 Summers, Oil and Gas, § 652.

The requirement that due regard be given to the rights of the surface owner, defines, to a certain extent, a consideration in determining if the mineral owner's use of the surface is reasonably necessary. In *Getty Oil Co. v. Jones, supra,* the Texas Supreme Court set forth what has become known as the "accommodation doctrine":

"There may be only one manner of use of the surface whereby the minerals can be produced. The lessee has the right to pursue this use, regardless of surface damage. [Citations omitted.] And there may be necessitous temporary use governed by the same principle. But under the circumstances indicated here; i. e., where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under the established practices in the industry there are alternatives available to the lessee whereby the minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee." 470 S.W.2d at 622.

The Utah Supreme Court adopted the opinion of the Texas court in *Flying Diamond Corporation v. Rust,* 551 P.2d 509 (Utah 1976), where it said, at page 511:

". . . wherever there exist separate ownerships of interests in the same land, each should have the right to the use and enjoyment of his interest in the property to the highest degree possible not inconsistent with the rights of the other. We do not mean to be understood as saying

that such a lessee must use any possible alternative. But he is obliged to pursue one which is reasonable and practical under the circumstances."

■■■■ We join with the Utah court in adopting the accommodation doctrine set forth in *Getty:*

"The reasonableness of a surface use by the lessee is to be determined by a consideration of the circumstances of both and, as stated, the surface owner is under the burden of establishing the unreasonableness of the lessee's surface use in this light. The reasonableness of the method and manner of using the dominant mineral estate may be measured by what are usual, customary and reasonable practices in the industry under like circumstances of time, place and servient estate uses. What may be a reasonable use of the surface by the mineral lessee on a bald prairie used only for grazing by the servient surface owner could be unreasonable within an existing residential area of the City of Houston, or on the campus of the University of Texas, or in the middle of an irrigated farm. What we have said is that in determining the issue of whether a particular manner of use in the dominant estate is reasonable or unreasonable, we cannot ignore the condition of the surface itself and the uses then being made by the servient surface owner. . . [I]f the manner of use selected by the dominant mineral lessee is the only reasonable, usual and customary method that is available for developing and producing the minerals on the particular land then the owner of the servient estate must yield. However, if there are

---

sarily inflicted in the exercise of a lawful right does not create a liability, but rather, the injury must be the direct result of the commission of a wrong. See 10A Thompson on Real Property (1957 Replacement) § 5325. We question, however, the social desirability of a rule which potentially allows the damage or destruction of a surface estate equal or greater in value than the value of the mineral being extracted.

Future mineral exploration and development can be expected to expand as our demands for energy sources grow. Equity requires a closer examination of whether or not the cost of surface damage and destruction arising from min-

eral development should be borne by the owner of a severed surface estate or by the developer and consumer of the minerals. Although we do not doubt the mineral estate owner's right to use the surface estate to explore, develop and transport the minerals, we specifically do not decide if the right of reasonable use also implies the right to damage and destroy without compensation. *But cf., Bell v. Cardinal Drilling Co.,* 85 N.W.2d 246 (N.D.1957). (Under the terms of the oil and gas lease, lessee had the right to use so much of the land as was reasonably necessary in the operation of drilling the test well.)

other usual, customary and reasonable methods practiced in the industry on similar lands put to similar uses which would not interfere with the existing uses being made by the servient surface owner, it could be unreasonable for the lessee to employ an interfering method or manner of use. These [conditions] involve questions to be resolved by the trier of the facts." 470 S.W.2d at 627–628.

In this case the Kerbaughs sought to prevent the oil companies from conducting seismic exploration activities on their property. The oil companies, on the other hand, sought an injunction prohibiting the Kerbaughs from interfering with such exploration.

The Kerbaughs, in support of their argument for denial of injunctive relief, offered affidavits and testimony indicating the damages they had sustained as the result of prior seismic exploration; that the present seismic activity was causing damage to their grain crop, pasture, and other farmland; and that they fear additional damage to property from further seismic activity.

■ Whether or not the use of the surface estate by the mineral estate owner is reasonably necessary is a question of fact for the trier of facts. *Slope County Board of County Commissioners v. Consolidation Coal Co.,* 277 N.W.2d 124 (N.D.1979); *Getty Oil Co. v. Jones, supra.* In addition, the burden of proof in such a determination is upon the servient estate owner. *Getty Oil Co. v. Jones, supra.*

■ The Kerbaughs presented evidence establishing the damage to their property that arose or was likely to arise as a result of seismic activity. They offered, however, no evidence of reasonable alternatives available to the oil companies to explore the properties. They offered no evidence that the same information could be obtained from the prior geophysical exploration; they offered no evidence that the same information could be obtained without transversing over cropland; and the record does not indicate that they offered evidence that the tests could be conducted in another

manner which would cause less damage to the Kerbaughs. Although the Kerbaughs did offer evidence suggesting some damage could have been avoided by having the oil companies conduct the operations a few weeks later, the affidavits filed by the oil companies indicate this was not a reasonable alternative. On the basis of the evidence presented by the parties, the Kerbaughs failed to meet their burden of proof that the proposed activities of the oil companies were not reasonably necessary for the exploration of the leased mineral estate. Accordingly, the conclusion by the district court that the oil companies were entitled to injunctive relief was not in error.

■ It is important to note that the Texas Supreme Court in *Getty* concluded the accommodation doctrine is not a balancing type test weighing the harm or inconvenience to the owner of one type of interest against the benefit to the other. Rather the court said the test is the availability of alternative non-conflicting uses of the two types of owners. Inconvenience to the surface owner is not the controlling element where no reasonable alternatives are available to the mineral owner or lessee. The surface owner must show that under the circumstances, the use of the surface under attack is not reasonably necessary. *Getty Oil Co. v. Jones, supra* at 623.

■ We agree a pure balancing test is not involved under the accommodation doctrine where no reasonable alternatives are available. Where alternatives do exist, however, the concepts of due regard and reasonable necessity do require a weighing of the different alternatives against the inconveniences to the surface owner. Therefore, once alternatives are shown to exist a balancing of the mineral and surface owner's interest does occur.

Kerbaugh argued and urged this court to adopt a rule of correlative rights and reasonableness, as discussed in *Pennington v. Colonial Pipeline Company,* 260 F.Supp. 643, 25 Oil and Gas Rptr. 514 (E.D.La.1966) *affirmed* 5 Cir., 387 F.2d 903. In that case the district court said the rights of the holder of a mineral lease, and the rights of

the owner of the surface "are correlative rights, neither being superior to nor inferior to the other, and the rights of each party can only be exercised in such a manner as not to unreasonably interfere with the rights of the other. [Citations omitted.]" Be that as it may, it does not change the basic rule that a servitude exists in favor of the oil and gas estate and thus it is the dominant estate and the surface estate is the servient estate. Although the rights implied in favor of the mineral estate can be exercised only by giving due regard to the rights of the surface owner, the mineral estate still remains dominant in the traditional real property sense. The district court in *Pennington,* although applying the right test of reasonableness, made an unfortunate use of the term "correlative rights" which is more appropriately used in referring to rights among various owners of mineral interests. *See, Arnstad v. North Dakota State Industrial Commission,* 122 N.W.2d 857 (N.D.1963); 1 Kuntz, Oil and Gas § 43.

The Kerbaughs also raise various procedural deficiencies in the oil companies' moving papers which they contend should have prohibited the granting of injunctive relief.

The Kerbaughs stated that no undertaking was ordered by the court either by the ex parte temporary injunction or the subsequent "temporary" injunction. Section 32–06–05, North Dakota Century Code, provides:

"When no provision is made by statute as to security upon an injunction, the court or judge shall require a written undertaking on the part of the plaintiff, with or without sureties, to the effect that the plaintiff will pay to the party enjoined such damages, not exceeding an amount to be specified, as he may sustain by reason of the injunction, if the court shall finally decide that the plaintiff was not entitled thereto. The damages may be ascertained by a reference or otherwise as the court shall direct."

This court has stated the above statute is mandatory to the issuance of an injunction. *Murphy v. Swanson,* 50 N.D. 788, 198 N.W. 116, 32 A.L.R. 82 (1924). The district court, in its ex parte restraining order, did not provide for an undertaking. The record discloses a $1,000 surety bond was filed with the district court on 24 August 1978, however, the bond by its language seems to apply only to the ex parte order. Although there were some irregularities in the manner in which the ex parte restraining order was issued, because that order was subsequently vacated and was not appealed from, the propriety of its issuance is not before us.

We will now consider the "order granting restraint" which is before us on appeal.

The oil companies filed a summons and complaint seeking injunctive relief. Before the answer to the complaint was served and filed, a hearing was held pursuant to "an order to show cause" why the Kerbaughs should not be restrained from interfering with geophysical exploration on certain property, after which a document entitled "Findings of Fact, Conclusions of Law and Order Granting Restraint" was filed. Technically, issues had not yet been joined. Notice of entry of the document was served on counsel for the Kerbaughs, who subsequently appealed.

The "order granting restraint" contains language [5] comparable to a permanent in-

---

5. The "order granting restraint" states as follows:

"NOW THEREFORE, IT IS HEREBY

"ORDERED, ADJUDGED AND DECREED, that the Plaintiffs' request for an Order enjoining the Defendants from interfering with the Plaintiffs in their geophysical exploration or other exploration for oil and gas on the subject real property is granted.

"IT IS FURTHER ORDERED, That the Plaintiffs pay to the Defendants, a sum equal to $50 per hole as and for damages and other injury to the surface and that this lump sum payment is to be made forthwith after completion of the current seismic activity on the Defendant's land.

"IT IS FURTHER ORDERED, That the Plaintiffs remain liable to the Defendants for any damages in excess of the lump sum payment indicated in the preceeding (sic) paragraph, and that this liability is only to the extent that the Defendants might establish

junction, and under the facts of this case in many respects has the net effect of a judgment for a permanent injunction. The geophysical exploration has been conducted. This fact cannot be undone. The question whether or not Kerbaughs, in any event, are entitled to damages is still remaining.

The "order granting restraint" was the result of a hearing on an order to show cause rather than on the merits of the basic action. Technically, the "order granting restraint" is not a judgment for a permanent injunction even though in many respects it is nearly the equivalent of a permanent injunction.

Kerbaugh also argued that the "order granting restraint" was invalid because no undertaking was furnished as required by § 32–06–05, NDCC. The record discloses that a $1,000 bond of First Heartland Surety & Casualty Insurance Company, dated 24 August 1978, was furnished on behalf of the oil companies. It contained language conditioning the payment of the amount set forth in the bond upon the setting aside of the "restraining order." It also refers to a "temporary restraining order" which apparently has reference to the ex parte temporary restraining order obtained by the oil companies which was later vacated.

■ We have serious doubt that this bond applies to the "order granting restraint" or that it satisfies the requirements of § 32–06–05, NDCC, which makes the furnishing of security mandatory. This question could become more serious, depending on the future developments of this case. The failure to furnish security is a matter which can be remedied. *Murphy v. Swanson,* 50 N.D. 788, 198 N.W. 116 (1924).

■ To promote the ends of justice, the doubt should be resolved promptly by either providing adequate security clearly relating to and in support of the "order granting restraint" or declaring the order null and void. We remand for this purpose.

■ The Kerbaughs contended the oil companies failed to provide the proper statutory notice prior to engaging in the exploration drilling. The record indicates some irregularity in the manner in which the filing requirements of § 38–08.1–04, NDCC, were complied with. Chapter 38–08.1 provides, however, its own penalty for a person violating the provisions of the chapter. If the oil companies in this case failed to comply with Ch. 38–08.1, they may be subject to the penalty provided in § 38–08.1–07, NDCC. Such failure of compliance, however, does not affect the validity of the temporary injunction.

The Kerbaughs also asserted the oil companies failed to show the existence of an exigency as to support the issuance of an injunction.

The oil companies were not required to show their proposed activities were the most reasonable or even that other alternatives were unreasonable in the absence of the Kerbaughs' bringing the reasonableness of other alternatives into issue. The oil companies had the right to use the surface in exploring for their minerals. They also had the right to seek an injunction preventing the Kerbaughs from interfering with the right of exploration. It was the Kerbaughs' burden to show the proposed activities were unreasonable by reason of the existence of other alternatives.

In summary, the Kerbaughs, as the owner of the servient surface, failed to show

---

and prove by a preponderance of the evidence, that such additional damages were proximately caused by the Plaintiff's seismic activity.

.    .    .    .    .

"DATED this 13th day of September, 1978."
This language clearly leaves the impression that it is a final determination on the oil companies' right to go on the premises to conduct seismic exploration activities. The restraint is

not limited until the resolution of the merits on the main action or to a certain time definite. Neither does it use language indicating it is temporary, but nevertheless it is technically not a judgment for a permanent injunction. This is true even though the prayer for relief in the main action is asking for the same thing that the order granting restraint provides. However, we are aware that the prayer for relief contains other material such as damages, costs, etc.

the proposed exploration activities of the oil companies were not reasonably necessary as to prevent the issuance of a temporary injunction. What showing will or can be made on the merits of the case for a permanent injunction is not before us on this appeal. Our decision goes only to the issuance of the temporary injunction, and we conclude the trial court did not abuse its discretion in issuing it upon the evidence presented.

For the reasons stated herein, this case is remanded to the trial court with instructions that unless Hunt Oil Company and Williams Oil Company provide adequate security in support of the "Order Granting Restraint" in an amount specified by the trial court within 15 days from the date of the remand of this case, the "Order Granting Restraint," dated 13 September 1978, will be null and void.

The order of the district court is affirmed.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.