Doris A. SLAATEN and Ralph
Slaaten, Appellees,

v.

CLIFF'S DRILLING
COMPANY, Appellant.

Doris A. SLAATEN and Ralph
Slaaten, Appellants,

v.

CLIFF'S DRILLING
COMPANY, Appellee.

Nos. 84–1122, 84–1156.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1984.

Decided Nov. 29, 1984.

Lawrence A. Dopson, Mandan, N.D., for appellants.

David L. Peterson, Bismarck, N.D., for appellee.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

PER CURIAM.

Cliff's Drilling Company (CDC) appeals from a judgment in favor of Doris and Ralph Slaaten for damages resulting from the seepage of salt water onto the Slaaten's land. CDC contends that the district court committed error in submitting the case on the theory of waste and in trebling the damage award under the waste statute. We reverse and remand for further proceedings consistent with this opinion.

Doris and Ralph Slaaten own the surface and mineral rights to certain land in McKenzie County, North Dakota. In 1974 the Slaatens leased their oil and gas rights to Agri-Empire. Tiger Oil International, Inc. (Tiger Oil) later acquired Agri-Empire's interest in the lease. In the spring of 1978 Edward Davis, Tiger Oil's operator on the Slaaten land, dug a salt water storage pit on the land in preparation for the drilling of an oil well. After digging the pit, Tiger Oil decided not to drill a well at that site and ceased further development efforts. Rather than closing the pit and restoring the land to its original condition, Tiger Oil filled the pit with salt water taken from other oil wells in the area. The

water was stored in the pit for approximately five months. In January of 1979, CDC, which owned 98.2% of Tiger Oil's outstanding stock, merged with Tiger Oil. Tiger Oil assigned the Slaaten lease to CDC and CDC assumed Tiger Oil's obligations and liabilities.

In September of 1981, the Slaatens brought this diversity action seeking cancellation of the lease for failure to explore and develop the leased acreage, and damages for seepage from the salt water pit. Before trial, CDC released its interest in the lease and admitted liability. Thus, the only issue at trial was the amount of surface damage.

The Slaatens sought general damages based on Tiger Oil's lack of ordinary care, exemplary damages for willful and malicious conduct under N.D.Cent.Code § 32–03–07 (Supp. 1983), and treble damages for waste under N.D.Cent Code § 32–17–22 (1976). The district court determined that these theories were duplicative, and required the Slaatens to choose whether to proceed on a theory of general and exemplary damages, or whether to proceed under the waste statute with treble damages. The Slaatens chose the waste statute because they did not "have to prove malice and all that sort of thing" to recover treble damages. The jury valued damage to the surface at $9,125.00 and the district court trebled this amount pursuant to section 32–17–22.

Section 32–17–22 allows an aggrieved party to bring an action in waste if "a guardian, tenant for life or years, joint tenant, or tenant in common * * * commits waste thereon." N.D.Cent Code § 32–17–22 (1976). Although CDC admits liability for any damage caused to the surface, it contends that it cannot be held liable for waste because it merely had an easement in the surface estate rather than one of the specific real property interests listed in section 32–17–22. The Slaatens argue that in acquiring a tenancy for years in the mineral estate, CDC also acquired a tenancy for years in the surface estate, and thus CDC

may be held liable under the waste statute. We conclude that CDC acquired only an easement in the surface estate. The district court thus committed error in applying the waste statute. Because we have determined that section 32–17–22 does not apply, we need not consider whether the award of treble damages under the statute was otherwise proper.

In interpreting a state statute, a federal court is bound by the construction given the statute by the highest court within the state. *Senn v. Tile Layers Protective Union,* 301 U.S. 468, 477, 57 S.Ct. 857, 861, 81 L.Ed. 1229 (1937); *Yoder v. Nu-Enamel Corp.,* 117 F.2d 488, 489 (8th Cir. 1941). "[W]here direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications * * *." *Yoder,* 117 F.2d at 489.

Although deference is generally given to the district court's interpretation of local law, *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 821 (8th Cir. 1983); *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir. 1981), we are not bound by this interpretation, and "must reverse if we find that the district court has not correctly applied local law, or if such interpretation of state law 'is fundamentally deficient in analysis or otherwise lacking in reasoned authority.'" *Gillette Dairy, Inc. v. Mallard Manufacturing Corp.,* 707 F.2d 351, 353 (8th Cir. 1983) (quoting *Ancom, Inc.,* 658 F.2d at 654).

In allowing the Slaatens to proceed under section 32–17–22, the district court noted that "there is substantial law that says that the waste statute applies." However, we have located no state court decisions that have directly addressed this issue, and our review of related North Dakota law convinces us that the waste statute should not have been applied under the circumstances of this case.

Since 1920 North Dakota has recognized that "[m]inerals in place are land, and may be conveyed as other lands are conveyed." *Beulah Coal Mining Co. v. Heihn,* 46 N.D. 646, 180 N.W. 787, 789 (1920). As such, the mineral interests may be separated from the surface rights, and may exist distinct from the ownership of the surface. *Id.* 180 N.W. at 789. *See also Bilby v. Wire,* 77 N.W.2d 882, 886 (N.D. 1956). Once the mineral and surface rights have been separated, two estates exist, "which are as distinct as if they contained two parcels of land." *Bilby,* 77 N.W.2d at 889. It is possible, therefore, to acquire one interest in the mineral or surface estate, and a different interest, or none at all, in the other estate. Thus, we must consider CDC's interest in the surface estate independent from its interest in the mineral estate.

Under a typical mineral lease, the lessee acquires a "working interest" in the mineral estate, which is a real property interest. *Miller v. Schwartz,* 354 N.W.2d 685, 689 (N.D.1984); *Corbett v. La Bere,* 68 N.W.2d 211, 213 (N.D. 1955). This working interest gives the mineral lessee the exclusive right to develop the minerals conveyed in the lease. *Miller,* 354 N.W.2d at 689 (citing 8 H. Williams & C. Meyers, Oil and Gas Law, Manual of Terms, 838–838.1 (1982)). Because the leased minerals are below the surface, the right to develop them would be meaningless and worthless unless the mineral lessee were allowed to use the surface to develop its leasehold interest. *See Hunt Oil Co. v. Kerbaugh,* 283 N.W.2d 131, 135 (N.D.1979). Therefore, "[t]he mineral estate is dominant in that the law implies, where it is not granted, a legitimate area within which mineral ownership of necessity carries with it inherent surface rights to find and develop the minerals, which rights must and do involve the surface estate. * * * Thus, the surface estate is servient in the sense it is charged with the servitude for those essential rights of the mineral estate." *Id. See also Feland v. Placid Oil Co.,* 171 N.W.2d 829, 834 (N.D. 1969).

■ The North Dakota Century Code defines a "dominant tenement" as "land to which an easement is attached," N.D.Cent. Code § 47–05–03 (1978), and a "servient tenement" as "land upon which a burden or servitude has been placed," N.D.Cent. Code § 47–05–04 (1978). "An easement is a charge or burden upon one estate, the servient, for the benefit of another, the dominant." *Johnson v. Armour & Co.*, 69 N.D. 769, 291 N.W. 113, 116 (1940). By classifying the mineral estate as dominant over the servient surface estate, it appears that North Dakota has adopted the position, which is in accord with the general rule in the oil and gas industry, that a mineral lessee acquires an easement in the surface estate for the purpose of developing its mineral interest. *See, e.g.,* 1 H. Williams & C. Meyers, Oil and Gas Law § 218 (1959) ("surface easements are implied as will permit the lessee or mineral owner to enjoy the interest conveyed"); 4 W. Summers, The Law of Oil and Gas, § 652 (1962) ("an oil and gas lessee has merely an easement and not a lease of the surface * * * ").

■ The Slaatens argue that CDC's interest in the surface was greater than an easement because an easement confers no right to participate in the profits arising from the land, and CDC would have shared in the profits had oil and gas been discovered. This contention, however, fails to consider the separateness of the surface and mineral estates, and actually supports CDC's argument that its interest in the surface was merely an easement. When the Slaatens leased their mineral interest, a farmer was renting the surface for agricultural purposes. CDC was only entitled to share in the profits produced from the mineral estate and had no right to share in the profits produced by the farmer on the surface.

■ We conclude that CDC acquired an easement in the surface estate to explore, develop, and market the minerals conveyed to it by the Slaatens. Because a "nonpossessory interest in land that is incapable of ever becoming possessory, such as an easement, cannot be the subject matter of a landlord-tenant relationship," Restatement (Second) of Property § 1.2 comment a (1977), we reject the Slaaten's contention that CDC acquired a tenancy for years in the surface estate and hold that section 32–17–22 does not apply in this action.

■ Our holding, however, does not absolve CDC of liability. CDC has admitted liability and a jury has determined that the damage to the surface was $9,125.00. The Slaatens pled, and allege on cross-appeal, that they should have been allowed to recover under the North Dakota exemplary damages statute. *See* N.D.Cent. Code § 32–03–07 (Supp. 1983). Because a mineral estate owner may be liable for the negligent or wanton use of the surface owner's estate, *Kerbaugh*, 283 N.W.2d at 135, we believe that the Slaatens should be allowed the opportunity to present evidence to prove their right to recover under the exemplary damages statute.

The judgment of the district court is reversed to the extent that damages are trebled, and the case is remanded to the district court for trial on exemplary damages only.