**Eddie SMITH, Plaintiff,**

v.

**ROCKWOOD INSURANCE COMPANY and Crawford & Company, Defendants.**

**No. LR–C–86–518.**

United States District Court,
E.D. Arkansas, W.D.

May 3, 1988.

Robert Pschiemer, Little Rock, Ark., for Eddie Smith.

Tom F. Lovett, Little Rock, Ark., for Rockwood Ins. Co.

Walter Murray, Bill Frye, Little Rock, Ark., for Crawford & Co.

## MEMORANDUM AND ORDER

HENRY WOODS, District Judge.

Defendants Rockwood Insurance Company and Crawford and Company and plaintiff Eddie Smith have motions for summary judgment now before the Court.

As stated by the United States Supreme Court, in *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962):

> Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.Rules Civ.Proc.

In compliance with Local Rule 29, the parties have submitted statements of the material facts as to which they contend there is no genuine issue to be tried. Based on the statements of the parties, and for the sole purpose of consideration of these motions, we accept the following facts as true, and turn now to the defendants' motions for summary judgment.

1. Plaintiff was an employee of Royal Floor Covering and was injured in the course of his employment on or about March 28, 1983.

2. Defendant Rockwood Insurance Company was the workers' compensation insurance carrier for Royal Floor Covering at the time of plaintiff's injury.

3. Defendant Crawford and Company was the insurance adjuster which the insurance carrier employed on plaintiff's claim.

4. Defendants caused repeated delays in payment of temporary total disability benefits when the plaintiff was clearly entitled to the benefits, despite plaintiff's repeated demands for payment.

5. Defendants failed to pay temporary total disability benefits when the plaintiff was clearly entitled to the benefits, and despite plaintiff's repeated demands for payment.

6. Defendants failed to pay permanent disability benefits, after the assignment of a permanent medical impairment rating by his physician, plaintiff being clearly entitled to the benefits, and making repeated demands for payment.

7. Defendants delayed payment of certain medical bills and refused to pay for hospitalization for plaintiff despite an Administrative Law Judge's Order to do so, filing a frivolous, meritless appeal to the Administrative Law Judge's Order in an effort to delay plaintiff's hospitalization, all done despite plaintiff's being clearly entitled to payment and despite repeated demands for payment.

8. Defendants, through their agent, servant, or employee, Melanie Zumstein, an employee of Crawford and Company, established grossly inadequate reserves despite knowledge that the plaintiff's injuries were severe and likely disabling.

9. Melanie Zumstein, of Crawford and Company, made false statements to the plaintiff's legal representatives on two occasions.

10. Melanie Zumstein tried to discourage plaintiff's employer from ever hiring plaintiff again.

11. The defendants ignored medical information in their possession which showed that plaintiff was entitled to temporary total disability benefits and failed to pay same. Defendants also ignored medical information in their possession which showed that the plaintiff's physician had assigned a permanent impairment rating to the plaintiff, and the defendants failed to pay permanent disability benefits that the plaintiff was entitled to because·of that rating.

12. Plaintiff's complaint alleges that defendants have committed the tort of bad faith, fraud, and intentional infliction of severe mental and emotional distress.

Working from these facts which we accept as true, we next note that we must determine how these facts relate to the pertinent statute in this case, Ark.Code Ann. § 11–9–105(a) (1987), which provides:

> The rights and remedies granted to an employee subject to the provision of this chapter [the "Workers Compensation Law"], on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer or any principal, officer, director, stockholder, or partner acting in their capacity as an employer, on account of the injury or death, and the negligent acts of a co-employee shall not be imputed to the employer.

The defendants, in almost identical motions for summary judgment, argue that the Arkansas Supreme Court has construed the statute in question so as to bar, as a matter of law, plaintiff's claim in this court. Plaintiff contends that the facts of his case are distinguishable from any cases previously decided by the Arkansas Supreme Court, that the Arkansas Supreme Court has not yet ruled whether there may be a bad-faith tort action based on mishandling of a workers' compensation claim, and that he is therefore not barred from pursuing this action. If the Arkansas Supreme Court has construed the statute in light of facts similar to those before us, we are bound to follow that construction. *Slaaten*

*v. Cliff's Drilling Co.*, 748 F.2d 1275 (8th Cir.1984).

In determining whether the Arkansas Supreme Court has found that the tort of bad faith is actionable against a workers' compensation insurance carrier, we initially note that the tort of bad faith is available in other types of insurance cases. *Aetna v. Broadway Arms*, 281 Ark. 128, 664 S.W.2d 463 (1984); *Employers Equitable Life Insurance v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984). However, the narrower issue of whether the tort of bad faith is available against a workers' compensation insurance carrier is discussed in the more recent case of *Cain v. National Union Life Ins. Co.*, 290 Ark. 240, 718 S.W.2d 444 (1986). A few excerpts from the brief opinion in *Cain* summarize the case:

> This third-party tort of bad faith action was filed by a workers' compensation claimant against the compensation insurer. *The claimant pleaded that the insurer stipulated it was liable for all medical expenses, but failed to pay those expenses and, as a direct result, the claimant suffered emotional distress, humiliation, and embarrassment.* The trial court dismissed the complaint. We affirm [emphasis added]....

We have previously ruled on this issue. In *Johnson v. Houston General Insurance Co.*, 259 Ark. 724, 536 S.W.2d 121 (1976), we held that the benefits payable pursuant to the workers' compensation act, and the procedure set out in that act for obtaining those benefits, constitute an exclusive remedy, and that remedy precludes an action at law, *even for an intentional tort arising out of the nonpayment of benefits* [emphasis added].

The case of *Johnson v. Houston General Ins. Co.*, 259 Ark. 725, 536 S.W.2d 121 (1976), cited in *Cain* was an appeal from the trial court's dismissal of the complaint for failure to state a cause of action. Plaintiff, injured while in the course of employment, was awarded a lump-sum amount by the Workers' Compensation Commission in October of 1974. When plaintiff did not receive his payment from the insurance carrier, he brought suit in March, 1975, alleging that the defendant

withheld payment "for the purpose of harassment, vexation and torment," that the defendant's conduct was "retaliatory and spiteful," and that plaintiff had been caused "substantial mental anguish, injury, and damages" as a result of defendant's behavior. The Arkansas Supreme Court, in affirming the dismissal of the complaint at the trial level, found meritless the plaintiff's argument that the Workers' Compensation Act was not the exclusive remedy under the facts of the case. We can say, based upon *Cain* and *Johnson*, that the Workers' Compensation Act is an exclusive remedy precluding actions at law "even for an intentional tort arising out of the nonpayment of benefits." *Cain*, 290 Ark. at 240, 718 S.W.2d 444.

Plaintiff strenuously contends that his facts are distinguishable from *Cain* and *Johnson* in that affirmative acts of misconduct have occurred in the case at bar. For example, the defendants' insurance adjuster lied concerning an alleged conversation with plaintiff's employer, and defendants' insurance adjuster discouraged plaintiff's employer from hiring plaintiff back after the injury. Though plaintiff urges that the above acts should be characterized as affirmative acts of misconduct which distinguish the case at bar factually from the *Johnson* and *Cain* cases, we do not agree.

An examination of the dissenting opinion in *Cain* emphasizes the similarity of the complaint in that case with the one at bar. The *Cain* dissent pointed out that the tort of bad faith had been recognized in the context of some types of insurance, citing *Findley v. Time Ins. Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978), and *Aetna v. Broadway Arms*, 281 Ark. 128, 664 S.W.2d 463 (1984). The dissent further observed:

> that a claim based on the tort of bad faith must include allegations of affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy.

**610**

*Cain v. National Union Life Ins. Co., supra,* at 445, 718 S.W.2d 444.

After stating these requisites of a bad-faith claim, the dissent went on to say that the complaint in *Cain* "tracked" these prior decisions which had recognized the tort of bad faith. *Id.* Those allegations necessarily included facts similar to those herein, namely, that the defendants' "affirmative misconduct" was "dishonest, malicious, or oppressive."

A review of paragraph 10 of the complaint, a catalog of the affirmative wrongdoings of defendants, bolsters our belief that this action is barred. Seven subparagraphs set forth the specific acts of the defendants. The fourth subparagraph (10(d)) provides that defendants intentionally, wrongfully, and fraudulently made statements which were false and were made "with the intent and design to deceive and avoid payment" under the workers' compensation insurance policy. The complaint notes that defendants stated that certain conversations had taken place between defendants and plaintiff's physician and employer, when the conversations had not occurred. These alleged conversations, according to the complaint, were a "pretext to avoid liability" under the insurance policy. The allegations of paragraph 10 of the complaint clearly indicate that plaintiff seeks relief for an intentional tort arising out of the nonpayment of benefits.

We note again that the Arkansas Supreme Court found the Workers' Compensation Act the exclusive remedy in *Cain,* precluding an action at law, even for an intentional tort arising out of the nonpayment of benefits. We believe the complaint before us seeks relief based upon an intentional tort arising out of the nonpayment of benefits. Thus, plaintiff's sole remedy is relief under the workers' compensation law of Arkansas.

We are aware of the case of *Heskett v. Fisher Laundry and Cleaners, Inc.,* 217 Ark. 350, 230 S.W.2d 23 (1950), where an employee, intentionally attacked by his employer during the course of his employment, was afforded a common-law remedy in tort. We do not believe that the Arkansas Supreme Court, in *Johnson* or *Cain,* overruled *Heskett* or held that there can never be an action in tort against the employer or the workers' compensation insurance carrier. However, the Arkansas court is quite clear that the common-law remedy for an intentional tort is not available for acts arising out of the nonpayment of benefits. We find plaintiff's action to be one for relief for intentional acts arising out of the nonpayment of benefits, as in *Cain* and *Johnson,* and that we are bound to follow the Arkansas Supreme Court's previous construction of the statute. Therefore, the workers' compensation statutes provide the exclusive remedy for plaintiff, and summary judgment should be entered in favor of the defendants.[1]

---

1. Plaintiff's motion for summary judgment is denied. All pending discovery motions are moot as a result of the granting of the defendants' motion for summary judgment and are therefore denied.