**KNIFE RIVER COAL MINING COMPANY, Plaintiff and Appellee,**

v.

**Shirley NEUBERGER; Marvell McMains; Dennis Neuberger; Dale Neuberger; Violet Cody; Defendants,**

**and**

**Shirley Neuberger and Dennis Neuberger, as Personal Representatives of the Estate of Ella Neuberger, Defendants and Appellants.**

**KNIFE RIVER COAL MINING COMPANY, Plaintiff and Appellee,**

v.

**Shirley NEUBERGER; Marvell McMains; Dennis Neuberger; Violet Cody; and Shirley Neuberger and Dennis Neuberger, as Personal Representatives of the Estate of Ella Neuberger, Defendants,**

**and**

**Dale Neuberger, Defendant and Appellant.**

Civ. Nos. 900297, 900291.

Supreme Court of North Dakota.

Feb. 22, 1991.

As Amended Feb. 27, 1991.

Richardson, Isakson & Lange, Hazen, for defendants and appellants, Shirley Neuberger and Dennis Neuberger, as Personal Representatives of the Estate of Ella Neuberger; argued by John Richardson.

Schultz Law Firm, Bismarck, for defendant and appellant, Dale Neuberger; argued by Alfred C. Schultz; appearance by Floyd B. Sperry, Bismarck.

Pearce & Durick, Bismarck, for plaintiff and appellee; argued by William P. Pearce.

ERICKSTAD, Chief Justice.

The defendants, Dennis and Shirley Neuberger, who are acting as the personal representatives of the Ella Neuberger Estate, and Dale Neuberger (Neubergers), appeal from the judgment of the District Court for the South Central Judicial District dated July 25, 1990. The district court denied the Neubergers' counterclaims which sought damages from Knife River Coal Mining Company (Knife River) under the Surface Owner Protection Act. The Neubergers assert that the district court erred in holding that Knife River was not liable for payments under the Surface Owner Protection Act, by allowing parol evidence concerning the interpretation of the two coal leases to be admissible at trial,

and by finding that the six-year statute of limitations barred any relief under the Act prior to 1981. The Neubergers also seek the recovery of reasonable attorney fees. We affirm.

Knife River initiated this action seeking to establish a binding allocation of payments due under two coal leases to the Neubergers. Payments under the leases had been placed in an escrow account after Knife River was informed that a dispute had arisen among the Neubergers regarding the proper distribution of the payments. The Neubergers responded to Knife River's action by filing counterclaims for payments under the Act, and by initiating a number of crossclaims between each other pertaining to the ownership of the property in question.

Knife River moved to sever, for trial, the issue of whether or not payments were due under the Act from the claims concerning the ownership of the property. The motion was granted by the district court on July 11, 1989.

The Neubergers moved to strike those parts of Knife River's responsive pleadings which claimed recovery under the Act would be limited by the six-year statute of limitations. In a memorandum opinion and order denying Neubergers' motion, dated September 20, 1989, the district court determined that the statute of limitations was applicable, and therefore barred any possible recovery of damages which may have occurred prior to 1981. In the same order, the district court determined that the Dead Man's Statute would not apply in this action and reiterated its position that it would allow parol evidence concerning the issue of whether or not surface damages were included within the payments under the lease.

The trial concerning the issue of whether or not Knife River would be liable for payments under the Act commenced on November 9, 1989. The district court held no payments were due under the Act and dismissed the Neubergers' counterclaims. The district court's decision was incorporated into findings of fact, conclusions of law and an order dated February 14, 1990. En-

try of judgment was reserved pending the resolution of the claims concerning the allocation of payments among the Neubergers under the lease.

On June 20, 1990, the district court approved a settlement agreement which provided for an equal distribution of payments among the Neubergers. This agreement eliminated the necessity of Knife River's initial action seeking to settle the allocation of payments. The district court then ordered the entry of judgment dismissing all of Neubergers' counterclaims and cross-claims, and provided for the equal distribution of all the deposited funds and future funds among the Neubergers.

In 1959, Adam and Ella Neuberger leased to Knife River Section 7 of Township 143 North, Range 87 West, in Oliver County, for the purpose of allowing Knife River to engage in coal mining operations. Two leases were entered into, one covering the North Half of Section 7, and one covering the South Half of Section 7. Adam and Ella were the owners of 100 percent of the coal in the South Half of Section 7 and 50 percent of the coal in the North Half of Section 7. The remaining 50 percent interest in the coal in the North Half of Section 7 is owned by the State of North Dakota. Adam and Ella owned the entire surface interest of Section 7. Following Adam's and Ella's deaths, the defendants in this case assumed the ownership interests in the land. Other facts relevant to this decision will be disclosed as necessary.

■ During oral argument questions arose concerning the apparent conflict between the contract clause of the federal constitution and the retroactive application of the Act.[1] However, we will not address new issues for the first time on appeal. *E.g., Lynch v. Williston City Com'n,* 460 N.W.2d 136, 138 (N.D.1990). Knife River specifically stated in its brief on appeal that it has not raised this issue: "It is

important to bear in mind that Knife River does *not* suggest that the Surface Owner Protection Act is inapplicable to these 1959 leases on the grounds that they predate its enactment in 1975."

Section 38–18–03, N.D.C.C., provides us with the purpose and intentions of the legislature in enacting the Act:

"*38–18–03. Purpose and interpretation.* It is the purpose of this chapter to provide the maximum amount of constitutionally permissible protection to surface owners from the undesirable effects of development, *without their consent,* of minerals underlying their surface. This chapter is to be interpreted in light of the legislative intent expressed herein. The provisions of this chapter shall be interpreted to benefit surface owners, regardless of how the mineral estate was *separated* from the surface estate and regardless of who executed the document which gave the mineral developer the right to conduct mining operations on the land. [Emphasis added.]"

We have previously said that the legislature's intent must initially be sought from the language of the statute. *E.g., Milbank Mut. Ins. Co. v. Dairyland Ins. Co.,* 373 N.W.2d 888, 891 (N.D.1985). "Statutory language must be given its plain, ordinary, and commonly understood meaning." *E.g., State v. Hersch,* 445 N.W.2d 626, 630 (N.D. 1989).

■ Upon reviewing the Act, we note that the purpose of the statute is to protect surface owners from the undesirable effects of development "without their consent." § 38–18–03, N.D.C.C. The language of the statute further provides that the provisions of the Act are to be interpreted to benefit the surface owners "regardless of how the mineral estate was

---

**1.** Apparently the legislature intended the Surface Owner Protection Act to apply to leases entered into before the date of enactment. *See* § 38–18–02, N.D.C.C.; S.L.1975, Ch. 321; North Dakota Legislative Council, Report to the Forty-fourth Legislative Assembly, 187–90 (Resources Development Committee) (1975); Minutes of

Senate Natural Resources Committee, March 6, 1975 (including a letter from the Attorney General to Representative Reimers indicating the potential contract clause problems). As the constitutionality of the Act was not raised below, we will not attempt to resolve that issue in this case.

*separated* from the surface estate." [2] § 38–18–03, N.D.C.C. (emphasis added). We conclude the legislature intended the Act to apply only where the surface owner had not consented to the development.

Section 38–18–06(3), N.D.C.C., discusses the effect of leases in determining consent:

"3. A certified copy of a mineral lease executed by the surface owner in favor of the mineral developer proposing the mining project or his agent, or a certified copy of a surface lease executed by the surface owner in favor of the mineral developer proposing the mining project or his agent, if filed with the application for a permit to surface mine, may be used to fulfill the subsection 2 requirement of a statement of consent to have surface mining conducted. Any previously executed mineral lease or surface lease in favor of the mineral developer, his successors, assigns, or predecessors in title runs with the land and is binding on a subsequent mineral owner or owners or surface owner or owners, as the case may be."

■ In the case at hand, Adam and Ella Neuberger were owners of both the surface and mineral interest of the land in question. By entering into the leases, Adam and Ella, the surface owners, consented to the coal mining operations. *See* § 38–18–06(3). The binding effects of the two leases run with the land and also apply to the subsequent surface owners, the Neubergers. *See* § 38–18–06, N.D.C.C.[3]

**2.** We have previously held that the surface estate is subservient to the mineral estate. *See Hunt Oil Co. v. Kerbaugh*, 283 N.W.2d 131, 135 (N.D.1979). We have also held that because the mineral estate is dominant, the owner of the mineral estate must be granted reasonable access to and use of the surface estate. *Id.*

**3.** Section 38–18–06, N.D.C.C., reads:

"*38–18–06. Written notice and consent required before permit to surface mine land may be issued.*

1. Before the public service commission may issue a permit to surface mine land, the mineral developer shall give the surface owner written notice of the type of land disturbance or mining operation contemplated by the mineral developer. This notice must sufficiently disclose the plan of work and operations to enable the surface owner to evaluate the extent of the land disturbance on his use of the property. The notice must be accompanied by an enlarged United States geological survey topographic map showing the specific locations to be covered by the mining operation. The notice and map must be submitted to the surface owner at least thirty days before the application for a permit to surface mine is to be submitted.

2. The public service commission may not issue a permit to surface mine land unless the permit application is accompanied by statements of consent, executed by each surface owner whose land is included within the permit area, to have surface mining conducted upon his land. The requirement established by this section is in addition to the requirements of chapter 38–14.1.

3. A certified copy of a mineral lease executed by the surface owner in favor of the mineral developer proposing the mining project or his agent, or a certified copy of a surface lease executed by the surface owner in favor of the mineral developer proposing the mining project or his agent, if filed with the application for a permit to surface mine, may be used to fulfill the subsection 2 requirement of a statement of consent to have surface mining conducted. *Any previously executed mineral lease or surface lease in favor of the mineral developer, his successors, assigns, or predecessors in title runs with the land and is binding on a subsequent mineral owner or owners or surface owner or owners, as the case may be.* [Emphasis added.]

4. If the mineral developer desires to have his permit amended to cover additional land, he shall file either consent statements or surface or mineral leases executed by the surface owners of such additional land as required by this section with the application to amend the permit to cover additional land. If, in addition, all of the requirements of chapter 38–14.1 are met, the public service commission may issue the amended permit.

5. If the mineral owner or the mineral developer is unable to obtain the surface owner's consent, the mineral owner or mineral developer may bring an action in district court to establish the relative rights of the parties and the measure of damages to the surface owner. At any time after the filing of any such action and either before or after the final decision of the district court, upon a showing to the satisfaction of the court that the surface owner will be adequately compensated for lost production, lost land value, and loss of the value of improvements due to the mining activity, the court shall issue an order which will authorize the public service commission to issue a permit to surface mine land without the consent which would otherwise be required by this section. In the event the damages awarded by the court to the surface

Therefore, we conclude that the relief provisions of the Act could not be applied to the case at hand.[4]  Having so concluded, we need not address the remaining issues which have been presented on appeal.

We affirm.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

owner exceed the amount tendered or otherwise provided for, the court shall award to the surface owner reasonable attorney's fees in addition to any other sums determined to be due to him."

4. Section 38–18–07(1), N.D.C.C., reads in part: *"Surface damage and disruption payments.*

   1. Unless the mineral lease, surface lease, or consent statement executed by the surface owner provides for payments to the surface owner, the mineral developer shall annually pay to the surface owner a sum of money equal to the amount of damages sustained by the surface owner for loss of agricultural production caused by mining activity, provided that it can be shown that the land disturbed or to be disturbed has regularly been used for agricultural production."

It is our view that this subsection does not apply in circumstances such as exist in this case where the surface owners and mineral owners were the same parties at the time of the execution of the mineral leases.